[Civil No. 1125. Filed April 2, 1910.]

[108 Pac. 701.]

JOHN HARPER, Plaintiff and Appellant, v. INDEPENDENCE DEVELOPMENT COMPANY, a Corporation, THOMAS E. FARRISH, J. C. GOODWIN, R. G. GOODWIN, and G. J. RIDENOUR, Defendants and Appellees.

1. CORPORATIONS—CONTRACTS—LIABILITY OF OFFICERS.—Where a stockholder and officer of a corporation dealt with laborers in his capacity as agent of the corporation, the corporation was alone liable for the work performed.

2. GUARANTY—OFFER AND ACCEPTANCE.—The owner of mining claims gave an option to purchase the same, which was transferred by the

holder to a corporation, which took possession, located adjoining claims, and employed men to develop the claims. The owner knew that the men did work on claims included in the option, and assured the laborers that in his opinion the mines were good for the money, and stated that if the corporation did not pay, the men should not lose their money, even if he had to sell or work the mine or have someone else work it, but he did not promise expressly to pay the wages of any of the men to whom he talked, and no one of the men testified' that the work was continued in reliance on the statement made by the owner. The continuance of the work was a benefit to the owner and his property. *Held,* that the owner was not personally liable to the men for the work performed.

3. MINES AND MINERALS—MINING CLAIMS—OPTIONS.—A contract to convey mining claims for a specified sum in cash and specified payments in one and two years, stipulating that the purchaser or his assigns may take possession of the claims and develop them during the life of the agreement, and that the purchaser agrees to abide by the terms of the agreement, and in default of any of the payments to surrender the property to the owner and forfeit all moneys paid and expended, is a mere option to purchase, for the purchaser is left to his election within the life of the agreement to purchase or to forfeit his rights.

4. SAME — CLAIMS OF LABORERS — LIENS.—Where an owner of mining property gives an option to another, who enters and works it, employing laborers to perform the work, no indebtedness is established in favor of the miners against the owner, and no lien is fastened on his interest in the property, because the work is not performed by virtue of any employment from the owner, and the holder of the option is neither a vendee nor an agent of the owner.

5. SAME—SALE OF MINING PROPERTY—CONTRACTS—CONSTRUCTION.—In agreements for the sale of mining property, time is of the essence.

6. SAME—SAME—SAME—SAME.—A contract to convey mining claims on the payment of part of the price in cash and the balance in two installments on specified dates makes time of the essence, and a failure of the assignee of the purchaser to pay the balance due on the dates fixed relieves the owner of any obligation to convey, and the right of the assignee is terminated.

7. SAME—LIENS OF LABORERS.—Where the assignee of an option to purchase mining claims entered on the claims and employed miners to work them, and his option expired on the failure to pay the purchase price on the dates stipulated in the contract, the laborers could not thereafter acquire any lien against the property for the labor performed.

8. APPEAL AND ERROR — QUESTIONS REVIEWABLE — IMMATERIAL QUESTIONS.—Where the trial court arrived at the correct result, that it gave a wrong reason therefor was immaterial.

XIII Ariz.—12

APPEAL from a judgment of the District Court of the Fifth Judicial District, in and for Gila County. Frederick S. Nave, Judge. Affirmed.

The facts are stated in the opinion.

Allred & Whitcher, for Appellant.

Under our present mine lien statute a mine laborer is entitled to a lien upon the mine or mining claim upon which he has labored to secure the payment of his wages in all cases where the labor is done on the claim either at the request of the owner of the claim or by his authority. The legislature in enacting paragraph 2904 gave to laborers and materialmen contributing by their labor or material to the improvement of a mine or mining claim the most ample security for the payment of their wages or the cost of their materials. Such act should be construed by the court so as to effectuate its object. *Land Assn.* v. *Ford,* 168 U. S. 513, 18 Sup. Ct. 170, 42 L. Ed. 562. "Where the owner of a mine had leased the mine with a contract that the lessee might operate the mine and extract ores, with the privilege of buying the mine, and the mine was subject to the lien of miners and others doing work on the mine for the lessee while operating the mine under such contract, . . . it is clear that the mining and reduction of ore, the timbering of the mine and repairing the mill were directly contemplated by the parties at the time of the execution of the instrument." *Eaman* v. *Bashford,* 4 Ariz. 199, 37 Pac. 24; *Moore* v. *Jackson,* 49 Cal. 109; *Gates* v. *Fredericks,* 5 Ariz. 343, 52 Pac. 1118. Personal liability of a defendant is not necessary in order to fix a lien upon his property. 27 Cyc. 349.

George R. Hill, for Appellees Goodwin and Goodwin.

"There is no statute, nor is there any principle, which can be called into requisition, which makes the leaseholder the agent of the lessor. Parties furnishing material or doing labor for the leaseholder undoubtedly may have a lien against the particular estate of the leaseholder; but to hold the owner of the property responsible and his estate in the property responsible would be to put the landlord at the

mercy of the tenant." *Hadley* v. *Cummings*, 7 Ariz. 258, 64 Pac. 443. "Those owing debts contracted by lessees or others having an appreciable interest in lands, which have arisen in regard to the lands, may file a lien to protect the payment of such debts against the interest which said lessees or others having an appreciable interest in the land may have herein; but although a mechanic's lien may reach such interest, it cannot reach the interest of the owner in fee, unless he is directly or by agency connected with the debt." *Griffin* v. *Hurley*, 7 Ariz. 399, 65 Pac. 147; *Bogan* v. *Roy & Titcomb*, 10 Ariz. 237, 86 Pac. 13.

DOAN, J.—This action was brought by appellant in the district court of Gila county, on March 26, 1908, against the appellees above named, for the sum of $9,519.28, and the foreclosure of a laborer's lien upon a group of mining claims securing that amount. The trial court gave judgment against the Independence Development Company, and decreed a foreclosure of the lien against the six mining claims found to be owned by it, but denied any relief as against the appellees Thomas E. Farrish, G. J. Ridenour, and J. C. and R. G. Goodwin and seven mining claims found to be owned by the Goodwins. From the judgment of the trial court, denying relief as against the last-named appellees and their property, the appellant has taken this appeal.

The facts in this case are quite complex, but appear from the record to be about as follows:

J. C. and R. G. Goodwin, on April 1, 1906, were the owners of a group of seven claims, adjoining each other, to wit, the Imperial No. 1, Imperial No. 2, Imperial No. 3, Oro Cobre No. 1, Oro Cobre No. 2, Oro Cobre No. 3, and Oro Cobre No. 4. On April 1, 1906, J. C. Goodwin, on behalf of himself and R. G. Goodwin, entered into an agreement with Thomas E. Farrish for the sale of the said seven claims, which agreement was as follows:

"Agreement.

"This agreement, made the first day of April, A. D. 1906, by and between J. C. Goodwin of Temple, A. T., and R. G. Goodwin of Globe, A. T., parties of the first part, and T. E. Farrish, of Phoenix, A. T., party of the second part, witnesseth: That the parties of the first part, being the owners

of seven mining claims in Globe mining district, Gila county, A. T., about two and one-half (2½) miles northeast from the 66 ranch and adjoining the Goodwin and Cole group of claims on the south, two of the claims being formerly owned by Kinney and McCarty, and then known as the Irene No. 1 and Irene No. 2, and the said claims are now known as the Superior No. 1, No. 2 and No. 3 and the Oro Cobre No. 1, No. 2, No. 3 and No. 4. Now therefore the parties of the first part agree to sell and convey the above-described property, under a good and sufficient title to the party of the second part, upon the following terms and conditions: One thousand ($1,000.00) dollars in cash, the receipt of which is hereby acknowledged; twelve thousand ($12,000.00) dollars to be paid by the party of the second part or his assigns to the parties of the first part on or before twelve (12) months from the date hereof, and the further sum of twelve thousand ($12,000.00) dollars to be paid as aforesaid on or before two (2) years from the date hereof. It is further understood and agreed by and between the parties hereto that the party of the second part or his assigns may take possession of the said mining claims and develop the same during the life of this agreement; and ship ore therefrom at his discretion, provided, that from the proceeds of such shipments of ore, the party of the second part shall pay to the party of the first part one-half (½) of the amount received from such sales of ore to be applied upon the payments as aforesaid. The party of the second part hereby agrees to abide by the terms of this agreement, and in default of any of the payments as above, to surrender the property to the parties of the first part, and forfeit all moneys paid and expended thereon.

"Signed and sealed the day and date above written.

"J. C. GOODWIN,
"Party of the First Part.
"T. E. FARRISH,
"Party of the Second Part."

Thereupon Farrish went into the possession of the property embraced in the above agreement, and located four claims adjoining, as follows: Parthian, Lulla B., Nelly Bly, and Ore Here. Thereafter Farrish and others organized the Independence Development Company, deeded to this company the

four claims located by Farrish already named, and assigned
to it the agreement between Farrish and the Goodwins set out
above. The Independence Development Company then lo-
cated two additional claims adjoining the original seven Good-
win claims and the four Farrish claims. These two claims
were the Parthian No. 2 and the Last Parthian, making in all
thirteen claims held by the company by virtue of the assign-
ment of the Goodwin-Farrish agreement, the deed from Far-
rish, and the locations of the company. The company then
undertook to mine, work and develop this group of thirteen
claims, which development work extended from about October
17, 1906, to May 1, 1908, and the work was done almost en-
tirely upon one of the claims, named the Imperial No. 2,
embraced in the agreement between the Goodwins and Far-
rish, and assigned by Farrish to the company. In the per-
formance of the mining and development work the company
employed the appellant, Harper, and some sixty other miners
and laborers, and finally became indebted to Harper and the
others in varying amounts. Harper acquired assignments
from the other miners for the respective amounts due from
the company; the amount owing to Harper individually and
by virtue of the assignment of claims aggregated the sum of
$9,519.28. For this amount Harper made out, verified and
recorded a lien and bill of particulars, duly served all parties
with copies in duplicate of the same, and instituted suit
against the Independence Development Company, J. C. and
R. G. Goodwin, Thomas E. Farrish, and G. J. Ridenour, for
the amount claimed and the foreclosure of the lien therefor
upon the entire group of thirteen claims. The trial court
gave judgment against the Independence Development Com-
pany for the amount claimed, and decreed a foreclosure of the
lien upon the six claims owned by it, but denied any relief as
against the Goodwins, Farrish, and Ridenour and the seven
claims embraced in the Goodwin-Farrish agreement, which
was assigned to the company. From this portion of the judg-
ment this appeal was taken.

It appears from the record that the labor performed by
plaintiff and his assignors was such work as would, under
chapter 2, title 40, Revised Statutes of Arizona of 1901,
entitle them to a lien. Plaintiff clearly had the right to bring
suit thereon for his individual claim and as assignee of the

claims of his fellow-workmen. The record shows that the lien for the aggregate amount, $9,519,28, was duly perfected under the statute, and suit properly brought within the statutory period thereafter. The judgment of the trial court against the Independence Development Company for $9,519.28 was perfectly proper, as was the foreclosure of the lien against the six claims owned by it. It remains to determine whether the trial court erred: In denying judgment against J. C. and R. G. Goodwin, Thomas E. Farrish, and G. J. Ridenour, and denying foreclosure of the lien against the property owned by them, in whole or in part, to wit, the seven claims named in the above agreement; in denying foreclosure of the lien against the interest of the Independence Development Company and that of Thomas E. Farrish in the same last-named claims; in holding that no lien existed against the seven Goodwin claims, for the reason that no personal liability attached to J. C. and R. G. Goodwin. These are the questions as raised by the appellant's assignments of error.

It seems clear that no personal liability attached to J. C. and R. G. Goodwin, Thomas E. Farrish, or G. J. Ridenour in favor of appellant or his fellow workmen and miners for labor performed by them. Appellant and others were under contract to, and employed by, the Independence Development Company, and by no other person or persons. Ridenour's relation to the company does not appear, and the record discloses no dealings or negotiations with the appellant. As to Farrish, he was evidently a stockholder and officer of the company, and his dealing and negotiations with the appellant and others, if there were any, were clearly in the capacity of agent; for such the company alone was liable. As to J. C. and R. G. Goodwin, appellant bases their personal liability upon the fact that the work done and labor performed was so done and performed upon the property owned by them, to wit, the Imperial No. 2 claim, with their knowledge and consent, and, further, upon the fact that R. G. Goodwin was frequently upon the ground during the performance of the said labor. Considerable evidence has been presented in the record to show that R. G. Goodwin frequently encouraged the work, advised appellant and others to continue working on the property after their wages were long in arrears, stating that he thought everything would come out all right; that in

case the company did not pay, he would see that the boys would get their money; that he would see that the mine was either worked by himself or by somebody for the men, and, even if necessary, he would sell the mine, and the men would not lose their money. This evidence is voluminous, and all to the same effect. Admitting it all, however strong the assurances were, they created no personal liability on the part of Goodwin. The statements in the record consist of expressions of confidence in the success of the undertaking; assurances that the company would pay; opinions that the mines should be good for the money; general statements that if the company did not pay, the men should not lose their money, even if he had to sell or work the mine, or have some one else work it. These were made generally to some person in regard to what would happen to or be done for others. He did not promise expressly to pay the wages of any man to whom he talked, nor did anyone testify that he or anyone continued working or performed labor in consideration of or reliance on any statement or promise made by Goodwin. That the continuance of this work may have been of great benefit to the Goodwins and their property is immaterial. All these statements and promises, if any of them could be called promises, were admittedly verbal, made to various men at different times. The appellant and others were not employed by the owners of the property, upon which the work was done, nor by any agent of such owners. They were employed by the Independence Development Company, which company held the property upon which the work was actually done under an option that had been assigned to the company by Thomas E. Farrish, who procured the same from the owners of the property, J. C. and R. G. Goodwin. It appears in the record that this condition of affairs was generally known to the men. In view of the foregoing, there appears no ground for any personal liability on the part of J. C. Goodwin, R. G. Goodwin, Thomas E. Farrish, or G. J. Ridenour in favor of appellant.

The next question presented is: Was the property owned by J. C. and R. G. Goodwin and embraced in the Goodwin-Farrish agreement subject to appellant's lien for work done under employment by the company, but with the knowledge of the Goodwins? Appellant contends that the relation of

vendor and vendee existed between the Goodwins and Farrish, and has cited authorities holding that a lien exists in favor of a miner or laborer who performs work at the instance of the vendee. These authorities are of no weight in the determination of this case, for the reason that the relation of vendor and vendee contended for does not here exist. The Goodwin-Farrish agreement must be construed to be an option, and nothing more. This agreement has heretofore been set out, and did not create the relation of vendor and vendee between the Goodwins and Farrish. By its terms there was no sale, Farrish did not agree, nor was he bound to do anything except ''abide by the terms of this agreement, and in default of any payment to surrender the property and forfeit all moneys paid and expended thereon.'' The Goodwins agreed to sell to Farrish upon certain conditions, namely, the payment of certain sums at one and two years' time, and it was agreed that ''Farrish or his assigns may take possession of said mining claims and develop the same during the life of this agreement.''

Farrish did not bind himself to buy or pay for the property, nor did he bind himself to take possession of and develop it. He merely agreed to abide by the terms of the agreement, which were, among other things, that ''Farrish or his assigns may take possession,'' etc. The entire matter was left to his election within the life of the agreement. This agreement was then nothing more than an option, and appellant's right to a lien in this case against the owners of the property is settled and determined by the rule laid down in *Gates* v. *Fredericks*, 5 Ariz. 343, 52 Pac. 1118, *Hadley* v. *Cummings*, 7 Ariz. 258, 64 Pac. 443, *Griffin* v. *Hurley*, 7 Ariz. 399, 65 Pac. 147, and *Bogan* v. *Roy & Titcomb*, 10 Ariz. 237, 86 Pac. 13, which is, in substance, that where an owner of mining property gives an option to another, who enters and works such property, employing laborers and miners to perform such work, no indebtedness is established in favor of the miners and laborers against the owner of the property, and no lien is fastened upon his interest therein. For it is held that such work is not performed by virtue of any employment from the owner, and the holder of such option is neither the vendee nor the agent of the owner. Under the rules laid down by this court in these cases, and since adhered to, the

Imperial No. 2 claim and the other six Goodwin claims stand upon the same ground, and are not subject to appellant's lien.

We next consider the interest of Thomas E. Farrish and the interest of the Independence Development Company in the seven Goodwin claims. No interest of Thomas E. Farrish appears in the record in or to any of these seven Goodwin claims, he having assigned his entire interest to the Independence Development Company; so this point may be dismissed.

The interest of the Independence Development Company in these claims was merely the right to exercise the option obtained by Farrish from the Goodwins and assigned to the company—the right to take possession and work the property, and, upon making the payments on April 1, 1907, and 1908, to receive conveyance of title to the seven claims. This interest, unless such payments were thus made, would cease and expire on April 1, 1908, and after this date the company would have no interest of any kind in or to these claims. It is elementary that in all such agreements, looking to the sale of mining property, time is of the essence. *Durant* v. *Comegys,* 3 Idaho (Hasb.), 204, 28 Pac. 425. Goodwin's agreement to sell and convey was predicated upon the payment of $12,000 one year from the date of agreement, and the further payment of $12,000 two years from the said date, as express conditions precedent to said sale and conveyance, and only on compliance with them would Farrish or his assigns, or any one of them, be entitled to the conveyance under the agreement. It required the payment of the stipulated sums on those dates to impose any obligation under the agreement on J. C. and R. G. Goodwin to sell or convey the property mentioned therein. The time specified in the agreement expired April 1, 1908; neither the company nor anyone for it having complied with the conditions prescribed in the agreement, there existed after that date no obligation on the part of J. C. or R. G. Goodwin to sell or convey the property embraced therein. This cause was tried October 28, 1908, some six months after the option had expired. Therefore, the Independence Development Company had no interest in the seven Goodwin claims at either the time of the trial or at the time the judgment was rendered. Clearly, no decree of fore-

closure against an interest which had ceased to exist could have been rendered.

Had any interest in or right or title to the seven Goodwin claims existed in the Independence Development Company, it would have been subject to appellant's lien, and no doubt the trial court would have granted a decree in favor of appellant foreclosing it.

It is urged by the appellant that the trial court held that appellant's lien was not operative against the seven Goodwin claims for the reason that no personal liability attached to J. C. or R. G. Goodwin, and this is assigned as error. The contention is not material, for the reason that upon the record, the court correctly held, not only that the appellant had failed to establish any personal liability on the part of J. C. or R. G. Goodwin, or either of them, but that neither the seven Goodwin claims nor the interest of J. C. and R. G. Goodwin, or either of them in said claims, or any of them, could be subject to any lien for labor performed for the Independence Development Company.

The questions above determined dispose of all of appellant's assignments of error. The record disclosing no reversible error, the judgment of the lower court is affirmed.

KENT, C. J., and CAMPBELL, DOE, and LEWIS, JJ., concur.