(June 26, 1918.)

## G. A. SMITH, GRACE M. HALL, and ELSIE HALL WILSON, Respondents, v. J. D. BEEBE, WATSON BEEBE and COLONIAL MINING AND MILLING COMPANY, a Corporation, Appellants.

[174 Pac. 608.]

MINING CLAIMS—OPTIONS—CONTRACTS—TIME—CONSTRUCTION.

1. A contract to convey mining claims which binds the holder thereof neither to make the specified payments nor to do or perform any of the acts stipulated therein to be performed by him except during the life of the contract, and which expressly gives him the option either to comply with its terms or to forfeit the "option" is an option contract; and the holder is not a vendee but merely the owner of an option.

2. The expiration of such an option contract by a failure of the holder thereof to comply with its terms does not render the contract void, but thereupon the owner may not only repossess himself of the property, but may also enforce any rights he has acquired under the contract, nor is he, under such circumstances, required to rescind in order to recover the property.

3. In agreements for the sale of mining property time is of the essence.

APPEAL from the District Court of the First Judicial District, for Shoshone County. Hon. William W. Woods, Judge.

Action to recover possession of certain mining claims and to have an option decreed to be not a cloud upon the title thereto. Judgment for plaintiffs *affirmed.*

Chas. E. Miller and S. S. Gundlach, for Appellants.

Generally, in contracts for the sale of land, unless expressed, time is not of the essence. (*Brown v. Guarantee Trust etc. Co.,* 128 U. S. 403, 9 Sup. Ct. 127, 32 L. ed. 468; *Goldsmith v. Guild,* 10 Allen (Mass.), 239; *Green v. Covillaud,* 10 Cal. 317, 10 Am. Dec. 725; *Waterman v. Banks,* 144

U. S. 394, 12 Sup. Ct. 646, 36 L. ed. 479; *Young v. Daniels,* 2 Iowa, 126, 63 Am. Dec. 477; *Derrett v. Bowman,* 61 Md. 526; *Beck & Pauli Lith. Co. v. Colorado Milling & E. Co.,* 52 Fed. 700, 3 C. C. A. 248; *Tayloe v. Sandiford,* 7 Wheat. (U. S.) 13, 5 L. ed. 384.)

Where one party to a contract has received and retained the benefits of the substantial partial performance of an agreement by the other party, who has failed completely to fulfil all his covenants, the first party cannot retain the benefits and repudiate the burdens of the contract, but he is bound to perform his part of the agreement and his remedy for the breach is limited to compensation and damages. (*Kauffman v. Raeder,* 108 Fed. 171, 47 C. C. A. 278, 54 L. R. A. 247; *Chance v. Clay County Commrs.,* 5 Blackf. (Ind.) 441, 35 Am. Dec. 131; *Stevens v. Cushing,* 1 N. H. 17, 8 Am. Dec. 27; *Young v. Stevens,* 48 N. H. 133, 2 Am. Rep. 202, 97 Am. Dec. 592; *Patterson's Appeal,* 48 Pa. St. 342; *Fay v. Oliver,* 20 Vt. 118, 49 Am. Dec. 764.)

James A. Wayne and C. W. Beale, for Respondents.

The lease did not create the relation of vendor and vendee, and such relation could only exist after the lessees had exercised their option to purchase. (24 Cyc. 1023; *Settle v. Winters,* 2 Ida. 215, 10 Pac. 216; *Steel v. Argentine Min. Co.,* 4 Ida. 505, 95 Am. St. 144, 42 Pac. 585; *Block v. Murray,* 12 Mont. 545, 31 Pac. 550; *Donaldson v. Thousand Springs Power Co.,* 29 Ida. 735, 162 Pac. 334; *Tilton v. Sterling Coal & Coke Co.,* 28 Utah, 173, 107 Am. St. 689, 77 Pac. 758; *Sweezy v. Jones,* 65 Iowa, 272, 21 N. W. 603.)

"Where the character of the property is such that it is liable to sudden fluctuation of value, time is of the essence of the contract. This rule is especially applicable to mining property." (*Settle v. Winters, supra; Durant v. Comegys,* 3 Ida. 204, 28 Pac. 425; *Castelberry v. Hay,* 8 Ida. 670, 70 Pac. 1055; *Waterman v. Banks,* 144 U. S. 394, 12 Sup. Ct. 646, 36 L. ed. 479; *Granville Lbr. Co. v. Atkinson,* 234 Fed. 424; *Staniford v. Thompson,* 135 Fed. 991, 68 C. C. A. 425; *Gaines v. Chew,* 167 Fed. 630.)

BUDGE, C. J.—On the 3d day of September, 1915, the respondents, being the owners of certain lode mining claims, entered into an agreement with the appellants, the material parts of which are as follows:

"WITNESSETH, that the parties of the first part for and in consideration of the sum of One Dollar ($1) lawful money of the United States, to them in hand paid, the receipt whereof is hereby acknowledged, and the further sum of Seventy Nine thousand, nine hundred ninety-nine ($79,999) dollars, to be paid in installments as hereinafter specified, *do hereby covenant, promise and agree,* by and with the parties of the second part, to *grant, bargain, sell* and by good and sufficient deed deliver to the parties of the second part" (here follows a description of the properties).

"It is understood and agreed that the deferred payments of said purchase price is to be paid as follows: Ten Thousand Dollars ($10,000) to be paid on or before six months after this date, or the 3rd day of March, 1916. Fifteen thousand ($15,000) dollars to be paid on or before eighteen (18) months after this date, or the 3rd day of March, 1917.

"Fifty four thousand nine hundred ninety nine dollars ($54,999) to be paid within two years after this date, or the 3rd day of September, 1917, and said payments shall be made by depositing the amount thereof in the First National Bank of Wallace, Idaho, to the credit of the parties of the first part.

"The parties of the first part hereby covenant and agree that they will make, execute and deposit in the First National Bank of Wallace, Idaho, a good and sufficient deed conveying said premises to the parties of the second part, for delivery to the parties of the second part upon the making of such payments.

"The parties of the second part shall have the right to enter into and upon said mining claims and to work and develop the same and to mine and extract therefrom and ship any ore so extracted, and sell the same, it being mutually agreed that fifty per cent (50%) of the net smelter returns

from all such ores shall be paid to the parties of the first part and fifty per cent (50%) to the parties of the second part; and that the fifty per cent paid to the parties of the first part shall be credited upon the purchase price of eighty thousand dollars ($80,000) for the land or the above mineral claims. It is further agreed that the parties of the second part will keep at least four men at work upon said group of mining claims *during the life of this contract;* and that they will keep said premises free and clear of all encumbrances of every kind and description by reason of any work or improvement placed thereon by them. *It is mutually agreed that if this option is not taken up by the parties of the second part, that all machinery and fixtures which may have been installed on the said mining claims by the party of the second part, shall remain and become a part of the premises* and belong to the parties of the first part.

"The parties of the second part agree that if they should locate any claims or fractions adjoining the property herein described *during the life of this option, that in the event they forfeit this option* they will quitclaim the said mining claims to the parties of the first part, and the parties of the first part agree that in the event they should locate any adjoining claims during the life of this bond, that they will, *upon the taking up of this option,* convey such claims to the parties of the second part. The parties of the second part agree to furnish the necessary buildings, machinery, cars, rails, tools and supplies, in fact all materials used in mining; all such buildings, machinery, cars, rails, tools and supplies bought by the said second party and placed upon the *said property shall become a fixture thereon and a part thereof.* The party of the second part further agrees to furnish to the parties of the first part a blue print copy of each and every survey made in or on the Little Pittsburgh group *during the life of this bond.* The parties of the second part also agree to cause to be filed and recorded with the County Recorder of Shoshone County, proofs of labor as required by law showing that the annual assessments have been completed, *during the life of this contract."* (Italics ours.)

The respondents, in their complaint to recover possession of the mining claims described in the agreement, alleged substantially: The making of the contract, the ownership of the mining claims, that appellants entered into the possession of the claims, the making of the deed and the depositing of same in escrow, the failure of appellants to make the payment of $10,000 due on the 3d day of March, 1916, or any other payments upon the property, the breach of the contract and forfeiture of the option to purchase, the demand for and the refusal to deliver possession by the appellants, and prayed that judgment be entered that the agreement, by reason of a violation of its terms, be declared void and of no effect, and that the same be canceled and be decreed not to be a cloud upon the title to the said lode mining claims; that they be awarded immediate possession of the mining claims described in the complaint, and that their right and title thereto be quieted against the appellants and all persons claiming under or through them. To this complaint a general demurrer was filed by appellants which was overruled. Thereupon appellants filed their answer admitting the ownership of respondents in the lode mining claims, that the contract set out therein was entered into on the date alleged in the complaint whereby respondents gave to J. D. and Watson Beebe an option to purchase all of the right, title and interest of respondents in the lode mining claims described in the agreement. That pursuant to the terms of the agreement, respondents delivered immediate possession of the lode mining claims to appellants; that the consideration to be paid under the option was the amount alleged in the complaint of the respondents; that the first payment was due on the 3d day of March, 1916, which appellants admit they failed to make as provided for in the contract, but allege that the failure to pay was not due to wantonness on their part or because of any intention to breach the contract, but that the same was due solely to the expending of a large sum of money in and upon said lode-mining claims in development work and unexpected failure in the sale of treasury stock of the defendant Colonial Mining & Milling Company, the successors in interest of the

Beebes, whereby the funds of appellants were so far exhausted as to leave them unable at the time it matured to make said payment. It is also alleged in the answer that the Colonial Mining & Milling Company succeeded to all of the rights and choses in action of the Beebes acquired by them under and by virtue of the contract heretofore referred to, by delivering to the Beebes, in payment therefor, certain paid-up shares of the capital stock of the Colonial Mining & Milling Co. To this answer respondents demurred on the ground "that the said answer does not state facts sufficient to constitute any defense to said complaint," which demurrer was by the court sustained. The appellants refused to plead further; the default of appellants and each of them was thereupon entered, and thereafter proof was submitted on behalf of the respondents and judgment entered as prayed for in their complaint. This appeal is from the judgment.

There are seven assignments of error, but the questions material to a proper disposition of the case are all raised by the third assignment:

"That the court erred in sustaining the demurrer of the respondents to the answer of the appellants."

The whole case hinges on the construction to be given to the contract above quoted, it being the contention of appellants that the contract is one of purchase and sale, and that the rights of the parties thereunder should be governed by the legal principles applicable to vendor and vendee; the contention of respondents being that the contract is not one of purchase and sale, but is a lease with an option to purchase, and that the legal principles governing the rights of vendor and vendee have no application to the questions in dispute.

It will be noticed that the contract does not purport to be one of sale, but the owners "covenant, promise and agree . . . . to grant, bargain, sell . . . . in consideration of certain sums to be paid upon the dates therein specified. In the body of the contract it is repeatedly referred to as an option, thus:

"If this *option* is not taken up . . . . all machinery and fixtures . . . . shall remain and become a part of the premises. . . . . "

It is agreed that if second parties "should locate any claims or fractions adjoining the property herein described during the life of this *option*, that in the event they forfeit this *option* they will quitclaim the said mining claims to the parties of the first part," and the first parties agree "that they will upon the taking up of this *option*" convey any adjoining claims located by them. There is no provision in the contract which binds the parties of the second part to do anything; there are certain things which they agree to do "during the life of this contract," which phrase also appears repeatedly in the instrument.

A similar contract, with terms practically identical in legal effect, was construed by the supreme court of Arizona in *Harper v. Independence Development Co.,* 13 Ariz. 176, 108 Pac. 701, wherein the court said:

"Appellant contends that the relation of vendor and vendee existed . . . . and cited authorities holding that a lien exists in favor of a miner or laborer who performs work at the instance of a vendee. These authorities are of no weight in the determination of this case, for the reason that the relation of vendor and vendee contended for does not here exist. The Goodwin-Farrish agreement must be construed to be an option, and nothing more. . . . . By its terms there was no sale, Farrish did not agree, nor was he bound to do anything except 'abide by the terms of this agreement, and in default of any payment to surrender the property and forfeit all moneys paid and expended thereon.' The Goodwins agreed to sell to Farrish upon certain conditions, namely, the payment of certain sums at one and two years' time, and it was agreed that 'Farrish or his assigns may take possession of said mining claims and develop the same during the life of this agreement.'

"Farrish did not bind himself to buy or pay for the property, nor did he bind himself to take possession of and develop it. . . . . The entire matter was left to his election within the life of the agreement. This agreement was then nothing more than an option, . . . . the holder of such option is neither the vendee nor the agent of the owner."

The answer admits that the $10,000 payment which was to have been made on March 3, 1916, was not made, but appellants contend that since the contract does not specify that time is of the essence of the contract, their failure to make the payment on the date specified should not operate to forfeit their rights thereunder. Many cases were cited in support of their contention, but none of them appear to be in point. As was said in *Harper v. Independence Development Co.*, *supra:*

"It is elementary that in all such agreements, looking to the sale of mining property, time is of the essence."

The rule seems to be universal that, "Where the character of the property is such that it is liable to sudden fluctuations in value, time is of the essence of the contract. This rule is especially applicable to mining property." (*Settle v. Winters,* 2 Ida. 215, 10 Pac. 216; *Durant v. Comegys,* 3 Ida. 204, 28 Pac. 425; *Sweezy v. Jones,* 65 Iowa, 272, 21 N. W. 603; *Standiford v. Thompson,* 135 Fed. 991, 68 C. C. A. 425; *Gaines v. Chew,* 167 Fed. 630; *Granville Lumber Co. v. Atkinson,* 234 Fed. 424; *Waterman v. Banks,* 144 U. S. 394, 12 Sup. Ct. 646, 36 L. ed. 479.)

Respondents contend in their brief that failure of appellants to make the payment when due rendered the contract void, but the law is otherwise. The contract did not become void by appellants' failure to meet the payment upon the date and in the manner specified. By their failure so to do their rights under the contract expired, and the right of respondents to repossess themselves of the property, and of any fixtures and machinery placed thereon by the appellants under the terms of the contract accrued, and this action was brought by respondents to enforce their rights, not merely as owners of the property but also as defined by the contract, and, as has been seen from the authorities referred to, must be sustained.

On the other hand, appellants contend that what respondents have attempted to do amounts to a rescission of the contract and for that reason all the benefits which may have accrued thereunder should be tendered back, that respondents have not only failed to tender back any of the benefits re-

ceived by them under the contract, but that their chief motive in declaring the forfeiture and bringing the action was to acquire valuable machinery and fixtures alleged in the answer to have been placed upon the property by appellants. But the action of respondents can in no sense be regarded as a rescission of the contract. The reasons above given bearing upon respondents' contention that the contract became void are equally applicable here and are a complete answer to this contention. We therefore hold that the demurrer to the answer was properly sustained. The judgment is affirmed. Costs awarded to respondents.

Morgan and Rice, JJ., concur.