(No. 6221.　January 17, 1936.)

ELI HENDRIX, Respondent, v. GOLD RIDGE MINES, INC., a Corporation, Defendant, and ERIK JANSON and JACOB JANSON, Appellants.

[54 Pac. (2d) 254.]

Paris Martin, for Appellants.

Cox & Ware, for Respondent.

AILSHIE, J.—Respondent Hendrix commenced this action for the foreclosure of eight liens filed against mining claims, under the Mechanics' Lien Law, I. C. A., secs. 44–501 to 44–516. One of the causes of action was to foreclose his own

claim and the other seven were assigned claims from other workmen. The action is prosecuted against Erik Janson and Jacob Janson as the owners of the property and against the Gold Ridge Mines, Inc., which was in possession of and working the property and employed the laborers whose liens are sought to be foreclosed. A decree of foreclosure was entered in favor of the plaintiff on all the claims alleged. The Jansons have appealed from the judgment.

The decision of this case turns upon the contracts, under which the defendant Gold Ridge Mines, Inc., came into possession of, and was working and operating, the property.

On August 15, 1932, the Jansons entered into a contract with Scandia Gold Co., reciting that they, as "parties of the first part hereby agree to *sell and convey* to said party of the second part and said party of the second part hereby *agrees to buy* for a total consideration of the sum of $50,000," the property thereinafter described and known as the "Snowshoe Mines." The contract also provided for a down payment of $550 and six monthly payments of $200 each and larger installments commencing with the first of March, 1933. The contract then provides:

"A copy of this agreement shall be deposited with the Bank of Camas Prairie of Grangeville, Idaho, as escrow agent. After the March 1st payment is made by said party of the second part, said parties of the first part agree to deposit with said escrow agent a good and sufficient mining deed conveying said premises to said party of the second part," etc.

The contract further recites the escrow conditions and instructions to the bank and that the purchasers shall be forthwith let into possession of the premises and be entitled to work and operate the same. Paragraph 5 of the contract provides:

"Said party of the second part shall immediately begin preparation to complete the objective tunnel on said property to tap the ore body approximately two hundred feet deeper than the present workings and said tunnel shall be completed in one year from the date hereof. Any and all

work done in and upon said premises during the life of this agreement shall be done in first class manner, miner fashion, and in such manner as may be necessary to the preservation of the property and compatible with economical mining. The underground workings shall be well timbered to prevent the same from caving."

The sixth paragraph requires that the second party shall do the annual assessment work on the claims and file proof thereof as required by law. The contract also contains the following paragraph:

"It is expressly understood and agreed by and between the parties hereto and these presents are upon the expressed condition that if said party of the second part shall fail, neglect or refuse to make any payments at the time and in the manner herein stipulated, except when a written extension of time has first been asked and obtained from the parties of the first part or if said party of the second part shall default in the performance of any of the covenants or conditions herein contained by it to be performed, then and in that event, said parties of the first part may, at their option, after thirty days written notice, made by them, or either of them, to said party of the second part, addressed to it at Lewiston, Idaho, immediately terminate this contract and retain all sums paid theretofore as due and liquidated damages, provided, however, that failure to make the payments due on the first days of September, October, November and December, 1932, and January, February and March, 1933, shall immediately terminate this agreement without further notice to said party of the second part."

On January 12, 1933, the Scandia Gold Co. made a general assignment for the benefit of its creditors and assigned this contract to the assignee, Hartley P. Kester; and on February 7, 1933, Kester sold and assigned the contract and all the interest of the Scandia Gold Co. to the defendant Gold Ridge Mines, Inc. Thereafter and on March 1, 1933, the Jansons as owners of the property entered into a "supplemental agreement" *with the defendant Gold Ridge Mines, Inc.*, in which they recited the assignment of the contract of August 15. '32,

to Kester and his assignment to the Gold Ridge Mines, Inc.; and among other things, recited in the supplemental agreement, is the following: "Whereas, under the terms of said contract, the parties of the first part [the Jansons], sold the Snow Shoe Claims therein listed to said Scandia Gold Co. . . . . " They then proceed to modify the contract in reference to the making of the subsequent payments and conclude: "It is expressly understood and agreed that said original contract is modified as herein set forth and in no other respects."

It was also provided that the supplemental agreement should "be placed in escrow together with the original agreement."

■■ It is clear from the terms of both the original contract and the supplemental contract that this transaction was a *sale and not a lease.* The only option contained in the contract was that reserved to the vendors (the Jansons), to terminate the contract and retain all sums paid therefor as due and liquidated damages, in the event the purchaser failed to make any payment as provided for by the contract "after thirty days written notice" given by the vendors. Under this contract the vendors could not escape conveying the property to the purchaser if the latter complied with the contract in the matter of making payments. On the other hand, no option whatever was reserved to the purchaser to refuse to take the property and pay the purchase price. Instead of declaring the contract terminated by failure of the purchaser to make payments, the vendors could have maintained their action against the purchaser for the payments as they fell due or for the full sum upon maturity of the last payment. (*Walsh v. Coghlan,* 33 Ida. 115, 190 Pac. 252.) In other words, they were under no obligation to exercise the option to terminate the contract.

We must conclude and so hold, that the contract under which the Gold Ridge Mines Co. was in possession of the property, and under which it was operating the same, was a contract of sale and purchase rather than a lease. It follows, therefore, that this case does not fall within the exception

attached to sec. 44–501, I. C. A., "that the lessee or lessees of any mining claim shall not be considered as the agent or agents of the owner under the provisions of this chapter." Nevertheless, under the provisions of the contract, whether it be held a lease or contract of sale, the property would be subject to the lien for the work done in this case, by reason of the fact that under paragraph 5 of the contract the vendors required the purchaser "to complete the objective tunnel on said property to tap the ore body approximately 200 feet deeper than the present workings, and said tunnel shall be completed in one year from the date hereof"; and paragraph 6 further required the vendees to do "the annual assessment work on the above claims for the year ending June 30, 1933, and for each year thereafter, during the life of this agreement, and shall prepare the necessary proof of labor and record the same," as required by law. Under this state of facts the vendee, Gold Ridge Mines Co., was the agent of the owner within the meaning of sec. 44–501, I. C. A.; and the workmen employed by the company to do the work were entitled to a lien for the same. (*Gem State Lumber Co. v. Union G. & E. Co.*, 47 Ida. 747, 278 Pac. 775; see also *Post v. Fleming*, 10 N. M. 476, 62 Pac. 1087.)

The contention has been made on behalf of the owners of the property that the workmen extended credit directly to the employer, the Gold Ridge Mines, and expected their pay from that source; that when doing the work the company was considered solvent and responsible, and the workmen had no thought of ever collecting their wages from the owners; and further that the contract was not of record and that there was no evidence that they knew anything about the provisions in the contract, requiring the company to do any specific work. In addition to these facts, however, it should also be remembered that the owners (the Jansons) were known to the men; were on and about the property constantly and knew that this work was being done. Appellants advised the men that certain work had to be done, and urged them to stay on the job and assured them that the company was responsible.

■ The protection, which the lien statute affords to workmen, is just as effective and as readily available to a laborer who does not know the terms of the statute when he takes employment and does the work, as to one who has full knowledge of its provisions. Whenever facts are shown to have existed, which bring a workman within the protection of the lien statute, it is no longer important as to whether he knew of his rights under the statute at the time he started on the work.

We conclude that under the facts of this case its decision is ruled by *Boise-Payette Lumber Co. v. Sharp*, 45 Ida. 611, 264 Pac. 665, and *Gem State Lumber Co. v. Union G. & E. Co.*, 47 Ida. 747, 278 Pac. 775. See also *Smith v. Beebe*, 31 Ida. 469, 174 Pac. 608; *Nicholson v. Smith*, 31 Ida. 544, 174 Pac. 1008; *Lamb v. Goldfield Lucky Boys Min. Co.*, 37 Nev. 9, 138 Pac. 902, 905; *Eaman v. Bashford*, 4 Ariz. 199, 37 Pac. 25.)

■ It has been urged here that the fifth paragraph of the contract (quoted above) had been waived and abandoned by mutual consent of the parties, after the assignment of the contract to the Gold Ridge Mines Company; and that the court erred in refusing to admit parol evidence of this fact. Evidence of such fact would have been admissible. However, when counsel for appellants came to make the offer of what he proposed to prove, it appeared that the proposed waiver was only contingent and conditional. Counsel said:

"They [the Jansons] eliminated the whole clause about the tunnel and said they [the Gold Ridge Co.] could work anywhere they pleased, as long as they made the payment on August 15th."

It will be remembered that this conversation, which they proposed to prove, took place somewhere from the 7th to the 10th of July preceding. It is, therefore, clear that the conversation did not work a change or modification of the written contract or amount to anything more than mere negotiations. There was consequently no error in the ruling of the court in rejecting the proposed evidence.

 Appellant assigns as error the action of the trial court in allowing interest on the several lien claims from the date of finishing the work, or ceasing to work, until the rendition of the judgment which totalled on the several claims the sum of $80.07.

Sec. 26–1904, I. C. A., as amended by chap. 197, 1933 Sess. Laws, reads as follows:

"*Legal Rate of Interest.*—When there is no express contract in writing fixing a different rate of interest, interest is allowed at the rate of *six cents* on the hundred by the year on:

"1. Money due by express contract.

"2. Money after the same becomes due.

"3. Money lent.

"4. Money due on the judgment of any competent court or tribunal.

"5. Money received to the use of another and retained beyond a reasonable time without the owner's consent, express or implied.

"6. Money due on the settlement of mutual accounts from the date the balance is ascertained.

"7. Money due upon open accounts after three months from the date of the last item."

The case at bar falls within the class enumerated in subdivision 7 of the foregoing section. The claims of the several workmen are for "money due upon open accounts."

The findings made by the trial court disclose that the defendants were entitled to credits for payments and offsets; and the accounts were each, therefore, "open accounts," within the meaning of the statute. (*McCarthy v. Paris,* 46 Ida. 165, 267 Pac. 232; *Norton v. Larco,* 30 Cal. 127, 89 Am. Dec. 70; *Oppenheim v. Hood,* (Tex. Civ. App.) 33 S. W. (2d) 265, 266; *Schucht v. Stidham,* (Tex. Civ. App.) 37 S. W. (2d) 214; 1 C. J., p. 601, par. 7.) They did not draw interest until the expiration of "three months from the date of the last item," whether that be an item of debit or credit. The findings and judgment must consequently be modified so that the accounts will not begin to draw interest until three

months from the date of the last item in each of the several accounts.

Counsel for appellant contends that no interest whatever should be allowed on these claims until after the entry of the judgment, and in support thereof cites and relies on *Storey & Fawcett v. Nampa & Meridian Irr. Dist.*, 32 Ida. 713, 187 Pac. 946, wherein it is said:

"The only question involved on the plaintiff's appeal is whether the court erred in refusing to allow interest on the amount found to be due from the date of the rendition of the service and the furnishing of the materials and prior to the date of the decision. This court has hitherto adhered to the rule that where a claim is for unliquidated damages, the amount of which is not susceptible of ascertainment by computation or by reference to market values, interest will not be allowed prior to judgment. (*Barrett v. Northern Pacific Ry. Co.*, 29 Ida. 139, 157 Pac. 1016; *Austin v. Brown Brothers Co.*, 30 Ida. 167, 164 Pac. 95; *Graham v. Brown Brothers Co.*, 30 Ida. 651, 168 Pac. 9.) While the point does not seem to have been material in the above cases, the circumstances of this case require us to call attention to the fact that the true date from which the amount found due draws interest is the date of the rendition of the verdict of the jury or the decision of the court. (C. S., Sec. 7220.)"

Each of the cases cited contains a statement of the law substantially the same as above stated, and they were all *tort actions for damages.*

The Storey-Fawcett case is not thought to be in point here. The rule applying to unliquidated damages for torts has no application to the case at bar which was founded on contract. Sec. 26-1904, *supra,* makes no classification of "liquidated" or "unliquidated" claims as such. (*Donley v. Bailey*, 48 Colo. 373, 110 Pac. 65; *Trimble v. Kansas City P. & G. R. Co.*, 180 Mo. 574, 79 S. W. 678, 1 Ann. Cas. 363.) It is dealing with the subject of money due on *contracts*, either express or implied, and applies as well to unsettled and disputed accounts as to those where the specific sum due is fixed and determined. The only condition is that it shall be a claim

arising on a contract express or implied. In such cases the sum due is capable of being made certain by some measure or standard of the contract, whether express or implied.

It is also contended by appellant that the court erred in not allowing certain credits on the claims of Starke, LaRue and Devin. The evidence, so far as it has been called to our attention, is very meager, conflicting and unsatisfactory on these items. We are not prepared to say, however, that there is not sufficient evidence to support the findings of the trial court on these accounts.

The respondent made a motion in this court for attorney fees on appeal, under sec. 44–513, I. C. A., which reads as follows:

"Any number of persons claiming liens against the same property may join in the same action, and when separate actions are commenced the court may consolidate them. The court shall also allow as part of the costs the moneys paid for filing and recording the claim, and reasonable attorney's fees."

It is contended that under this statute lien claimants are entitled to recover attorney's fees, where they are required to appear in the appellate court, for the purpose of protecting their rights. It is urged by respondent that the fee for service rendered in this court on appeal should be fixed, either by the trial court after the appeal has been taken or by this court on the appeal. We are cited to several California cases (*San Joaquin Lumber Co. v. Welton,* 115 Cal. 1, 46 Pac. 735; *Sweeney v. Meyer,* 124 Cal. 512, 57 Pac. 479, and *West Coast L. Co. v. Newkirk,* 80 Cal. 275, 22 Pac. 231), so holding. We do not think these cases apply under our statute for the reason that the California statute in force when these cases were decided specifically provided for the allowance of "reasonable attorney's fees in the superior and supreme courts." (Sec. 1195, Vol. 3, Deering's Code (1885).)

It is significant that our statute, which was adopted in 1893 (1893 Sess. Laws, p. 54, sec. 12), and was evidently copied from the California lien statute, omitted the provision for allowance of attorney's fees in the *supreme* court. The·

fact that this provision was omitted from our statute leads to the conclusion that it was not intended that such practice should prevail here.

We, therefore, hold that our statute only authorizes the collection of such fees for foreclosure of liens in the district court.

The judgment is affirmed in all respects except as to interest on the several accounts, and in that respect the trial court is directed to find the amount of interest accrued on each account commencing three months after the last item of each respective account, and to modify the judgment to conform thereto. The entire taxable costs of both appellants and respondent should be divided and borne equally by each of the parties, and it is so ordered.

Givens, C. J., concurs.

Budge, J., concurs in conclusion reached.

Morgan and Holden, JJ., did not sit at the hearing and took no part in the decision of this case.