87 P.3d 955

**FRANKLIN BUILDING SUPPLY CO., an Idaho Corporation, Plaintiff–Appellant,**

v.

**Douglas E. SUMPTER and Pamela K. Sumpter, husband and wife; Sterling Savings Bank, Defendants–Respondents,**

and

**Pond Construction, Inc.; Clarence and Susan Pond, husband and wife; Transnation Title & Escrow; CC Cabinets, Inc.; Price Rite Carpets; John W. Ward; Allen Ashby; and John K. Ward d/b/a Ward Plumbing, Defendants.**

No. 29822.

Supreme Court of Idaho, Boise, November 2003 Term.

March 4, 2004.

Rehearing Denied April 14, 2004.

Jones, Gledhill, Hess, Andrews, Fuhrman, Bradbury & Eiden, PA, Boise, for appellant. Scott D. Hess argued.

Ling & Robinson, Rupert; Stoel Rives, LLP, Boise, for respondent. Thomas A. Banducci argued.

BURDICK, Justice.

Franklin Building Supply filed a materialman's lien on the home of Douglas and Pamela Sumpter after their contractor, Pond Construction, defaulted on its account with Franklin and filed for bankruptcy. The appeal challenges the district court's order holding that the lien was not timely filed and dismissing Franklin's foreclosure proceedings, and the district court's use of the statutory rate of interest to be applied on the lien claim. Because the lien was filed within ninety days of the date that the last item was supplied by the materialman, we reverse the district court's ruling as to timeliness of the lien; and we affirm the application of the statutory rate of interest.

## FACTS AND PROCEDURAL BACKGROUND

In May 1998, Douglas and Pamela Sumpter entered into an agreement with Clarence Pond and Pond Construction, Inc. ("Pond") to build their home. Pond began construction in July 1998. On November 25, 1998, the city building inspector orally advised the Sumpters that they could occupy the home, and he issued the certificate of occupancy for the home on November 27, 1998, subject to the completion of the porch columns. After the Sumpters moved in, they prepared several punch lists of items that needed to be completed in the home. While the punch list items were being worked on, the Sumpters initially withheld final payment to Pond. The Sumpters signed the borrower's acceptance statement on December 17, 1998, but only sent it to Pond on December 29. The Sumpters made their final payment to Pond on January 11, 1999, although some punch list items still remained to be completed.

From July 2 to December 16, 1998, Franklin Building Supply ("Franklin") supplied the materials used to construct the Sumpters'

home through Pond's open account. On December 16, 1998, Pond purchased a sheet of cedar and a locking door handle for the Sumpters' home, as well as some electrical cords and a hammer that were not used in the Sumpters' home. Franklin maintained separate open accounts for each of Pond's construction projects, and it submitted separate monthly bills to Pond for materials supplied for the Sumpters' home.

Pond failed to pay Franklin for the materials used in the Sumpters' home and eventually filed for bankruptcy. So as not to compound Pond's financial problems, Franklin waited as long as possible to file a lien on the Sumpters' home. On the ninetieth day following the December 16, 1998, order by Pond, Franklin filed its claim of lien on the Sumpters' property, in accordance with the I.C. § 45–507. The lien amount was the cost of the materials supplied to Pond, as well as eighteen percent interest for the period of July 1998 to December 16, 1998.

Franklin filed its complaint in September 1999 seeking to foreclose its lien. Both parties filed motions for summary judgment, which were denied by the district court because there were genuine issues of material fact, which required that the case proceed to trial. During the pendency of the trial to the court, Franklin sought to admit Pond's application for credit, for the purpose of establishing an 18 percent interest rate that was a term of the parties' credit agreement. The district court ruled the application inadmissible and held that statutory interest applied, because the Sumpters were not party to the credit agreement between Franklin and Pond.

On October 1, 2001, the district court issued its Findings of Fact, Conclusions of Law and Order granting dismissal of the claims against the Sumpters. The district court found that although Franklin's lien was filed within ninety days of the last items supplied by Franklin on the Sumpters' home, the statute required it to be filed within ninety days from the date of substantial completion of the home. The district court, therefore, concluded that Franklin's lien was untimely and entered judgment against Franklin.

Franklin appeals, challenging the district court's interpretation of the lien statute, I.C. § 45–507, and its evidentiary ruling barring admission of Pond's credit application. On Franklin's appeal in this Court, we assigned the case to the Court of Appeals; the Court of Appeals reversed and remanded the case to the district court to determine the amount due to Franklin under its claim of lien, including interest and other costs or fees provided by law. This Court granted the Sumpters' petition for review.

## STANDARD OF REVIEW

■■■ "When considering a case on review from the Court of Appeals, this Court gives serious consideration to the Court of Appeals; however, this Court reviews the trial court decision directly. This Court is not merely reviewing the correctness of the Court of Appeals' decision; rather, this Court is hearing the matter as if the case were on direct appeal from the district judge's decision." *Northland Ins. Co. v. Boise's Best Autos & Repairs,* 131 Idaho 432, 433, 958 P.2d 589, 590 (1998). Where there is no dispute as to the factual circumstances, our review consists of ascertaining the effect of applicable law on the undisputed facts. *Simplot v. William C. Owens, M.D., P.A.,* 119 Idaho 243, 244, 805 P.2d 449, 450 (1990).

■■■ A district court's findings of fact in a court-tried case will be liberally construed on appeal in favor of the judgment entered, in view of the district court's role as trier of fact. *Western Heritage Ins. Co. v. Green,* 137 Idaho 832, 835, 54 P.3d 948, 951 (2002) (citing *Conley v. Whittlesey,* 133 Idaho 265, 269, 985 P.2d 1127 (1999); *Lindgren v. Martin,* 130 Idaho 854, 857, 949 P.2d 1061, 1064 (1997)). Review of the decision is limited to ascertaining whether the evidence supports the findings of fact and whether the findings of fact support the conclusions of law. *Id.* If the findings of fact are based on substantial evidence, even if the evidence is conflicting, they will not be overturned on appeal. *Id.* However, this Court exercises free review over questions of law. *Id.*

## DISCUSSION

### I.

■ Idaho's materialman's lien statute provides that every person who performs labor, furnishes materials or renders professional services in the construction of a building or other structure "has a lien upon the same for the work or labor done or professional services or materials furnished." I.C. § 45–501 (Supp.1998). "The purpose of these statutes is to compensate persons who perform labor upon or furnish material to be used in construction, alteration or repair of a structure." *Barber v. Honorof*, 116 Idaho 767, 768–69, 780 P.2d 89, 90–91 (1989). The laws regarding materialman's liens are liberally construed in favor of the person who performs labor upon or furnishes materials to be used in the construction of a building. *L & W Supply Corp. v. Chartrand Family Trust*, 136 Idaho 738, 742–43, 40 P.3d 96, 100–01 (2002).

■ "Lien foreclosures under I.C. § 45–501 *et seq.* are strictly actions *in rem* and are not *in personam* proceedings: 'The lien statute operates in rem, and not in personam. It creates no personal charge against the owner of the property, but rather a charge against the property to the extent of its value.'" *Pierson v. Sewell*, 97 Idaho 38, 44, 539 P.2d 590, 596 (1975) (citation omitted). The materialman's lien statute is remedial in nature. *Electrical Wholesale Supply Co., Inc. v. Nielson*, 136 Idaho 814, 824, 41 P.3d 242, 252 (2001). A lien itself is not a penalty, but rather is designed to provide a contractor with security. *Guyman v. Anderson*, 75 Idaho 294, 296, 271 P.2d 1020, 1021 (1954). To create a valid lien, there must be substantial compliance with the requirements of the statutes. *L & W Supply*, 136 Idaho at 743, 40 P.3d at 101.

■ At the time of the filing of Franklin's lien in 1998, Idaho Code § 45–507 provided in relevant part:

Any person claiming a lien pursuant to the provisions of this chapter must, within ninety (90) days after the completion of the labor or services or furnishings of materials, or the cessation of the labor, services or furnishings of materials for any cause, file for the record ... a claim containing a statement of his demand. ...

The district court in this case found that "Idaho courts have consistently held that the time for filing a lien claim begins to run from the substantial completion of the contract." The district court also found that "items of a trivial character will not extend the time for claiming a lien." In support of its findings, the district court cited to *Pierson v. Sewell*, 97 Idaho 38, 539 P.2d 590 (1975) and *Gem State Lumber Co. v. Witty*, 37 Idaho 489, 217 P. 1027 (1923). Both of these cases affirm the principle that the sixty-day period for the filing of liens cannot be extended or revived by the furnishing of trivial labor or materials once the contract has been completed. The Court in *Pierson* held that the time for filing the lien claim began to run from the cessation of the subcontractor's furnishing of materials. *Pierson*, 97 Idaho at 41, 539 P.2d at 591. Pierson, a subcontractor, supplied materials and labor through his employees and, thus, had a right to a lien on the dwelling, pursuant to I.C. § 45–501 then in existence. The Court determined that Pierson had furnished labor and materials on January 14, 1972, in order to complete his subcontract in connection with the construction of Sewell's dwelling. Although urged by Sewell to begin counting the sixty-day period within which a notice of lien is to be filed from the date Pierson's employees finished their work in December 1971, the Court held that the lien filed within sixty days of the date the last materials were supplied on March 9, 1972, was timely. *Id.*

In *Gem State*, two liens against Witty's property were at issue: a materialman's lien filed by Gem State on July 3, 1918, and a second lien for labor and materials filed on July 6, 1918, by Vogt for the construction of the heating plant. The Court in *Gem State* determined that the lumber company was a subcontractor in furnishing materials for Witty's property, and therefore, was required to file its lien within sixty days from the completion of the building or the date of furnishing the last item of material. The Court found a failure of proof of delivery or use in the building of any items of material from Gem State between January 23 and

May 4, 1918. The Court thus had to resolve whether the lien limitation ended sixty days from January 23, or whether the item purchased on May 4, 1918, served to extend the time for filing the lien. In voiding the lien, the Court invoked the rule that furnishing an article that was trivial in nature is not sufficient to extend the time for claiming a lien or to revive an expired lien, where the article is furnished after a substantial completion of the contract, and the article is not expressly required by the terms thereof. *Id.* at 500, 217 P. at 1030. The Vogt lien was a clearer case for the Court to decide, as the facts revealed that the heating plant was completed in December 1917, at which time tenants moved into the premises. The Court concluded then that the small amount of work done on July 3, 1918, was for purpose of reviving a lien whose time for filing had expired months prior upon the "substantial completion of the contract." *See id.* at 499–500, 217 P. at 1029. Vogt's lien was untimely.

Strict materialmen, such as Franklin, differ from builders and lien claimants who furnish only labor or labor and materials when analyzing "substantial completion of the contract," and the distinction is reflected in their respective contracts. A builder or sub-contractor is generally on the job site pursuant to a contract to complete the project or a specified portion of a project. A determination of when that contract has been substantially completed can be made from the facts and knowledge of the project's status is inherent in its performance. In contrast, an open account materialman's contract is to furnish materials when requested. An open account is:

> Simply an account with a balance which has not been ascertained. The account is kept open in anticipation of future transactions. Where an open account exists the parties are deemed to intend that individual items on the account will not be viewed separately but that the account will be considered as a connected series of transactions. (Citation omitted.)

*Kugler v. Northwest Aviation, Inc.*, 108 Idaho 884, 887, 702 P.2d 922, 925 (Ct.App.

1985). Thus, the contract (continuous open account) is not substantially completed until the last item is delivered.

In *Valley Lumber & Man. Co. v. Driessel*, 13 Idaho 662, 93 P. 765 (1907) the Supreme Court determined that:

> Where materials are furnished for the same building or improvement in installments and at intervals and the parties intend them to be included in one account in settlement, the entire account will be treated as a continuous and connected transaction, and the lien limitation begins to run from the last item of the contract.

■ We reject the suggestion that a strict materialman should be required to make a determination of the status of the project when he delivers items, to report back to the company, and to have this knowledge imputed to the company. To require a materialman to monitor the status of a project to determine the date of substantial completion is inconsistent with commercial realities and in derogation of the remedial nature of the lien statutes.

We are compelled to determine that the contract has been completed "by the weight of authority, this is to be ascertained by the conditions of the contract, the conduct of the parties with reference thereto, and the surrounding facts and circumstances." 37 Idaho 489, 499, 217 P. at 1030 (citations omitted). Franklin stated that the items that were purchased by Pond on December 16, 1998, were not supplied "for the purpose of reviving the lien and extending the time in which the same might be filed." *Gem State Lumber*, 37 Idaho at 500, 217 P. at 1030. Franklin acknowledged that although the dollar value of these items was minimal, they were actually used in constructing and repairing the Sumpters' home; they were reasonably necessary to complete construction according to the terms of the contract; and they should not be found to be trivial. Although some time had passed since Pond's November 20, and 24, 1998, purchases on his account—for the porch posts and materials—the December 16, 1998, purchase was not for reviving the lien time and was needed to complete the punch list and, therefore, the items pur-

chased were the last items needed to complete the contract. *See Valley Lumber & Man. Co. v. Driessel, supra.*

The issuance of the certificate of occupancy dated November 25, 1998, should not be the "trigger" for the filing period to begin to run. We reiterate that the lien limitation begins to run from the last item of the contract, which in this case was purchased on December 16, 1998. We reverse the district court's decision and hold Franklin's lien to be timely, thereby restoring Franklin's rights to proceed against the Sumpters' property to the extent of its claim.

## II.

 Franklin sought to admit into evidence the credit application completed by Pond, contending that the application was relevant to support its entitlement to 18 percent interest on the past due amounts from Pond's open account. Franklin and Pond had entered into a credit agreement, which expressly stated, "[i]nterest is charged on all past due balances at the rate of 1.5% of the unpaid balance per month, which is an annual percentage rate of 18%." At the time Franklin filed its lien, Pond owed $49,702.26, with finance charges of $4,610.42, for a total of $54,312.68. The district court found "while interest is recoverable, the proper amount in a case like this would be the statutory rate because there isn't any contract rate. There's no contract between these parties." Therefore, based on lack of privity between Franklin and the Sumpters, the district court excluded Pond's credit application.

 This Court reviews de novo a district court's decision regarding the relevancy of evidence. *Howell v. Eastern Idaho R.R., Inc.,* 135 Idaho 733, 738, 24 P.3d 50, 55 (2001).

Case law holds that "the extent of the lien ... must be measured by the amount found due him on *his* contract at the time of the filing of his lien." *Steltz v. Armory Co.,* 15 Idaho 551, 558, 99 P. 98, 101 (1908) (emphasis added). A claim of lien under I.C. § 45–501 [1]

includes interest. *Acoustic Specialties, Inc. v. Wright,* 103 Idaho 595, 599, 651 P.2d 529, 533 (1982); *Guyman v. Anderson,* 75 Idaho 294, 296, 271 P.2d 1020, 1021–22 (1954); *Hendrix v. Gold Ridge Mines, Inc.,* 56 Idaho 326, 335–37, 54 P.2d 254, 257–58 (1936). In *Guyman, supra,* where the dispute between the parties involved the rate of pay itself, this Court held that the statutory rate of interest provides the interest rate in the absence of an express contract. *Id.* at 296, 271 P.2d at 1021.

Franklin was permitted to file a lien for the amount it was owed under its contract with Pond, pursuant to I.C. § 45–507. We sustain the district court's ruling that a lack of privity between Franklin and the Sumpters precludes application of contract interest. Accordingly, we affirm the district court's decision not to admit Pond's credit application, in favor of allowing the rate of interest specified in the statute.

## III.

 Idaho Code § 45–513 provides for the award of costs and reasonable attorney fees in the foreclosure of materialman's liens. This Court has held that the statute does not allow the award of attorney fees on appeal by materialman's lien claimants. *Hendrix v. Gold Ridge Mines,* 56 Idaho 326, 330, 54 P.2d 254, 258 (1936) (holding "that our statute only authorizes the collection of such fees for foreclosure of liens in the district court."). "Although attorney fees on appeal are not available pursuant to I.C. § 45–513, an award may be made under I.C. § 12–121 if the appeal was brought frivolously, unreasonably or without foundation." *Fairfax v. Ramirez,* 133 Idaho 72, 79, 982 P.2d 375, 382 (Ct.App.1999).

 Significant issues were raised on appeal concerning the interpretation of I.C. § 45–507 and the relevant case law, therefore the appeal does not appear to have been brought frivolously, unreasonably or without foundation. Attorney fees are not awarded pursuant to I.C. § 12–121.

---

1. Idaho Code § 45–511 provides:
 The original or subcontractor shall be entitled to recover, upon the claim filed for him, only such

amount as may be due to him according to the terms of the contract. . . .

## CONCLUSION

We reverse the district court's conclusion that Franklin' materialman's lien was untimely filed. We uphold the district court's exclusion of Pond's application for credit with Franklin and affirm the application of the statutory rate to compute interest on Franklin's recovery. No attorney fees or costs are awarded on appeal.

Chief Justice TROUT and Justices SCHROEDER, KIDWELL and EISMANN concur.