Vincent ROTTA, Jr., Western General Construction Company, et al., Plaintiffs, Appellant and Cross–Respondent,

v.

Hal HAWK, Home Savings and Loan Association, et al., Defendants, Respondent and Cross–Appellant.

No. 860356–CA.

Court of Appeals of Utah.

June 10, 1988.

Noall T. Wootton (argued), American Fork for Webster General Construction Company.

Richard A. Rappaport, Keith W. Meade (argued), Salt Lake City for Home Savings & Loan.

Scott E. Miller, Chief Title Officer, Universal Title Ins., Minneapolis, Minn. for Universal Title Insurance.

A.H. Boyce, Salt Lake City for Home Savings & Loan.

Randall W. Richards, Ogden for Pioneer Door Sales.

Parley R. Baldwin, Ogden for Johnsons Electric Company.

Walter F. Bugden, Salt Lake City for Vincent Rotta.

Lynn J. Clark, Midvale for RCI, Inc.

Richard L. King, Salt Lake City.

James E. Morton, Salt Lake City for Vincent Rotta, Jr.

Grant G. Orton, IPC Ltd., Equity Reliance, Salt Lake City for Tihl & Clark.

David Stazinsky, Security Title, Salt Lake City for Security Title Co.

C. Reed Brown, Salt Lake City for Kirby Building.

Randall L. Skeen, Salt Lake City for Geneva Rock.

R. Dale Potter, Salt Lake City.

Kent Collins, Salt Lake City.

Steven H. Gunn, Salt Lake City.

Before JACKSON, BENCH and DAVIDSON, JJ.

## OPINION

DAVIDSON, Judge:

Respondent and cross-appellant Home Savings and Loan Association (Home Savings) was the construction lender while appellant and cross-respondent Western General Construction Company (Western General) was the general contractor on a project in Salt Lake County, Utah. The overall construction project proceeded as two separate projects with separate contracts and loans executed for each project but with the same developer, lender, and contractor. The first project involved building self-storage units on parcels of land denominated 1, 2, and 3; the second involved building on parcels A and B. Appellant concedes the priority of Home Savings' deed of trust on the first project. The deed of trust concerning the second project and relative to parcels A and B, was signed on May 31, 1984, and initially recorded with the Salt Lake County Recorder on June 7, 1984. The document was rerecorded on June 27, 1984, with the notation "this document is being rerecorded to add the date." The original book and page numbers as well as the recording stamp were deleted and new data placed on the deed of trust. On June 20, 1984, Western General wrote the project developer outlining the costs and method of payment for the second project.

Prior to June 20, 1984, no work had begun on the structures to be placed on parcels A and B. However, during April and May, brush and trees were removed from these two parcels to allow the removal of dirt which was utilized as fill to complete the project on parcels 1, 2, and 3. Residences on parcels A and B were not removed until the latter part of June.[1] Subsequent to removal of the residences, replacement fill dirt was placed on parcels A and B to achieve the elevation necessary for construction of the storage units.

Partial summary judgment was granted Home Savings in which the Third District Court found that no work had commenced on parcels A and B prior to the recording of Home Savings' interest and therefore, Home Savings' interest had priority over the lien claimants. Subsequently, the trial court denied Home Savings' motion to assess attorney fees against Western General stating "the instant action was brought to determine priorities."

On December 10, 1986, the trial court directed that the orders regarding the priority of Home Savings' deed of trust and the denial of attorney fees were final judgments pursuant to Utah R.Civ.P. 54(b). Western General appeals on the issue of the priority of Home Savings' deed of trust over its lien and Home Savings cross-appeals the denial of its motion for attorney fees from Western General.

Because the parties stipulated there were no questions of fact, we address the issue of priority as a matter of law. We accord the trial court's conclusion concerning "commencement of work" no particular deference, but review it for correctness. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985).

We first determine whether the clearing of brush and trees and the removal of dirt

---

1. The residences on these parcels had to be removed to allow the construction on the second project to proceed.

for another project constitute lienable work within the meaning of Utah Code Ann. § 38–1–3 (1987) which states:

Contractors, subcontractors, and all persons performing any services or furnishing or renting any materials or equipment used in the construction, alteration, or improvement of any building or structure or improvement to any premises in any manner ... shall have a lien upon the property upon or concerning which they have rendered service, performed labor, or furnished or rented materials or equipment for the value of the service rendered, labor performed, or materials or equipment furnished or rented by each respectively, whether at the instance of the owner or of any other person acting by his authority as agent, contractor, or otherwise.

 "The purpose of the mechanics' lien act is remedial in nature and seeks to provide protection to laborers and materialmen who have added directly to the value of the property of another by their materials or labor." *Calder Bros. Co. v. Anderson,* 652 P.2d 922, 924 (Utah 1982). For work to add to the value of property it is necessary that the work benefit the specific property in question. The work performed on parcels A and B would constitute an improvement had it been done with the intent and purpose of benefiting the second project.[2] However, the work in its totality was performed for the benefit of the project on parcels 1, 2, and 3 and not for the subsequent project on parcels A and B. We hold that the work fails to meet the threshold requirement of an improvement under section 38–1–3, and cannot provide the basis of a lien against parcels A and B.[3]

 While the work itself is not an improvement and is not lienable against parcels A and B it may be argued that the work benefited the overall development and may therefore be used to "tack" to a subsequent project. Utah Code Ann. § 38–1–5 (1974) states:

The liens herein provided for shall relate back to, and take effect as of, the time of the commencement to do work or furnish materials on the ground for the structure or improvement, and shall have priority over any lien, mortgage or other encumbrance which may have attached subsequently to the time when the building, improvement or structure was commenced, work begun, or first material furnished on the ground; also over any lien, mortgage or other encumbrance of which the lien holder had no notice and which was unrecorded at the time the building, structure or improvement was commenced, work begun, or first material furnished on the ground.

This statute applies to work begun on or materials furnished to the same structure or improvement against which liens have been filed. *See Western Mortgage Loan Corp. v. Cottonwood Constr. Co.,* 18 Utah 2d 409, 412, 424 P.2d 437, 439 (1967). The statute has no application to the circumstance as in this case where the work was performed exclusively for another project.

The self-storage units erected on parcels 1, 2, and 3 involved a separate contract and a separate loan from those units built on parcels A and B. The fill dirt removed from parcels A and B was utilized on parcels 1, 2, and 3. The work performed on parcels A and B during April and May 1984 had no relation to the future structures ultimately erected on the parcels. These structures were *contracted for* subsequent to the recording of the deed of trust which concerned parcels A and B; therefore, the clearing and digging on parcels A and B took place before a loan and contract for the structures to be erected thereon were in existence. We hold that the work at issue does not provide Western General with a priority date to which their lien

**2.** The evidence shows that the work actually created a liability to the property since, without replacement fill, the project could not proceed.

**3.** We do not suggest that the work described could not be the basis of a lien on parcels 1, 2, and 3. Certainly the moving of fill dirt onto a site for the benefit of the project could constitute an improvement as described in section 38–1–3.

could "tack." The priority of Home Savings' deed of trust is affirmed.

Home Savings appeals the trial court's order which denied attorney fees against Western General "as the instant action was brought to determine priorities." Home Savings claims to be entitled to such an award pursuant to Utah Code Ann. § 38–1–18 (1974) which states "In any action brought *to enforce any lien* under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action" (emphasis added). Utah case law interprets this section narrowly requiring a complaint or counterclaim initially be brought to enforce a lien in order to award attorney fees. *AAA Fencing Co. v. Raintree Dev. and Energy Co.*, 714 P.2d 289 (Utah 1986); *Petty Inv. Co. v. Miller*, 576 P.2d 883 (Utah 1978); *Palombi v. D & C Builders*, 22 Utah 2d 297, 452 P.2d 325 (1969).

Four cases were ordered consolidated into this action on April 15, 1986. Among the cases so consolidated was *Western General Const. Co., Inc., v. Pihl and Clark Enter., Inc., et al.,* No. C85–5268. Home Savings was named as one of the defendants in that case. Western General's first cause of action was to foreclose its lien on the property and have it sold to "satisfy said lien." In the amended complaint, Western General alleged all other claims against the property were inferior including the trust deed of Home Savings. Because Western General initially brought the action to enforce its lien against Home Savings, the successful party is entitled to attorney fees. We reverse and remand to the trial court to award attorney fees to Home Savings against Western General arising from the lien foreclosure action, including fees on appeal. Home Savings' entitlement to attorney fees on appeal flows from section 38–1–18. *AAA Fencing Co.*, 714 P.2d at 293.

We affirm in part, reverse in part, and remand to the trial court for a hearing in accordance with this opinion. Costs against Western General.

BENCH and JACKSON, JJ., concur.