LeeAnn NAY, individually and as personal representative for Matthew and Merissa Nay, the heirs of Robert Nay; and Virginia Nay, individually and as personal representative for Connie Wheeler, Carolyn Gallegher, Joan Nay and Jalynn Nay, the heirs of Wayne Nay, Plaintiffs and Appellants,

v.

GENERAL MOTORS CORPORATION, GMC TRUCK DIVISION, and Ron Green Chevrolet Pontiac GMC, Inc., Defendants and Appellees.

Nos. 910244, 910273 and 910365.

Supreme Court of Utah.

April 2, 1993.

Stephen G. Morgan, Salt Lake City, for plaintiffs and appellants.

James H. Clegg, Rodney R. Parker, Salt Lake City, for defendants and appellees.

ZIMMERMAN, Justice:

This products liability and negligence case is before us on appeal from a directed verdict in favor of defendants. Plaintiffs ("the Nays") are the heirs of Wayne and Robert Nay, who were killed when Wayne's truck crashed in Salina Canyon, Utah. The Nays sued General Motors Corporation and GMC Truck Division (collectively, "General Motors"), which designed and manufactured the truck, and Ron Green Chevrolet Pontiac GMC, Inc. ("Ron Green"), which sold and repaired the truck. The Nays alleged that the truck had an unreasonably dangerous design defect that caused the accident. The trial court granted a directed verdict in favor of General Motors.[1] We reverse.

■ Before reciting the facts, we note that in reviewing a grant of a directed verdict, we view all facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *See, e.g., Management Comm. of Graystone Pines Homeowners Ass'n v. Graystone Pines, Inc.,* 652 P.2d 896, 898 (Utah 1982); *Anderson v. Gribble,* 30 Utah 2d 68, 71, 513 P.2d 432, 434 (1973). We state the facts in this case accordingly.

Ron Green sold Wayne Nay a 1986 GMC High Sierra pickup truck on July 3, 1986. Ron Green performed a one-thousand-mile checkup and made minor repairs on the truck on August 25, 1986. On September 20, 1986, Wayne was driving his truck with his nephew Robert and Robert's son Matthew when the steering wheel locked as he tried to negotiate a curve on Convulsion Coal Mine Road in Salina Canyon. The truck went straight off an embankment into a wash, killing Robert instantly. Before Wayne died, he told his brother, who arrived at the scene shortly after the accident, that the "[g]oddamn truck didn't turn." Eleven-year-old Matthew, the only survivor of the accident, testified that the truck was shaking and that Wayne was trying unsuccessfully to turn left when the truck went off the road.

The Nays sued General Motors and Ron Green, charging that the truck was defectively designed. At trial, the Nays identified the alleged defect as a "pinch point," or fluctuating gap, between the flexible steering coupling and the steering box. In

---

1. The parties stipulated to Ron Green's dismissal from suit at the beginning of trial.

support of their allegation, the Nays called three expert witnesses who theorized that a stone or other small object had wedged in the pinch point, locking the steering and preventing Wayne from turning the wheel.

One of the Nays' experts, Lindley Manning, testified that a tire could have clipped a stone lying on the road and knocked it into the truck fender, whence it ricocheted onto the top of the tire and bounced into the steering gear. David Stephens, another expert testifying for the Nays, said that it would be "very easy" for a tire to throw a rock into the steering gear. Plaintiffs' final expert, Charles Bayse, testified that during an experiment at his residence, he had placed small stones in the pinch point of the steering coupling on a General Motors' truck—although not the model of truck at issue in this case—and that the stones had "interfered with the ability to turn the steering wheel." Bayse also stated that a stone could bounce from the road into the steering coupling, but that it would happen "extremely infrequently."

In addition to the expert testimony, the Nays sought to introduce two items of evidence: first, that in 1973, General Motors recalled 3,707,064 cars having similar steering boxes and flexible couplings because of the potential for rocks to become lodged between the coupling and the automobile frame; and second, that General Motors shielded the flexible coupling of the recalled cars with plastic to prevent this hazard, a precaution it continued in later models of those cars. General Motors moved in limine for a protective order excluding the evidence and argued that the recall and redesign of the 1973 cars were irrelevant because of the difference between the 1973 cars' steering gear layout and that of the 1986 trucks. Specifically, the recall addressed the possibility that stones might wedge between the flexible coupling and the *automobile frame.* In the recalled cars, the steering box was mounted next to the frame, creating a narrow space between the coupling and the frame. The plastic shield was located around the coupling to keep stones out of this narrow space. There was no suggestion in the recall that stones could lodge between the coupling and the steering box. The Nays, however, based their claim on the allegation that a stone had lodged between the flexible coupling and the *steering box itself.* They do not suggest that the stone lodged between the coupling and the frame. According to General Motors, this is understandable because the design of Wayne Nay's truck had "significant space provided between the coupling and the frame," avoiding a pinch point and preventing the hazard that required the 1973 recall. Because of these design differences, General Motors said, the evidence was irrelevant.

The trial court found the evidence of the recall and redesign inadmissible. Although the court did not identify the rule of evidence on which it based its determination, the language of the minute entry indicates that the court found the evidence unfairly prejudicial under Utah Rule of Evidence 403. Utah R.Evid. 403. After this ruling, the case proceeded to trial. At the conclusion of all the evidence, the trial court granted a directed verdict for General Motors. The Nays appeal.

The Nays raise two issues before this court. First, did the trial court err in refusing to admit the evidence of the recall and redesign? Second, did the trial court err in directing the verdict in favor of General Motors? We take these issues in turn.

■ We begin our discussion of the recall and redesign evidence by stating the appropriate standard of review. We review a trial court's determination that evidence should be excluded under rule 403 for abuse of discretion and reverse only if the ruling is beyond the bounds of reasonability. *State v. Dunn,* 850 P.2d 1201, 1221 (Utah 1993); *State v. Hamilton,* 827 P.2d 232, 239–40 (Utah 1992); *see State v. Thurman,* 846 P.2d 1256, 1270 n. 11 (Utah 1993). With this standard in mind, we turn to the rule 403 issue in this case.

■ We first evaluate the probativeness of the evidence on the recall and redesign.

The scenario the Nays presented at trial was premised on the following alleged facts: first, that a pinch point existed between the flexible coupling and the steering box; second, that a tire clipped a stone lying on the pavement and knocked it into the air; third, that the airborne stone ricocheted from the fender to the tire and into the pinch point; and fourth, that the stone locked the steering.

Given this scenario, we think that evidence of the recall and redesign of an entirely different vehicle with a different steering gear layout has little real probative value in this case. Evidence that General Motors instigated the 1973 recall solely because of a possibility of a pinch point between the coupling and frame would tell the jury virtually nothing about the possibility of a pinch point between the steering coupling and the steering box.[2] The evidence of a pinch point between the coupling and the frames in the 1973 cars has little bearing on whether a pinch point existed between the coupling and the steering box in the 1986 truck. Furthermore, the evidence has little bearing on the Nays' theory that a tire can loft a stone into the air by clipping it or that an airborne stone can ricochet from a fender to the tire and into a pinch point between the coupling and the steering box or that General Motors was aware of or should have foreseen this possibility. The 1973 recall was motivated by a concern that a front frame cross-member mounted ahead of the steering box—a cross-member not present on the truck at issue—might scoop stones *directly* into the area of the coupling and the frame. The recall establishes nothing about clipping or ricocheting into a pinch point.

The only obvious probative value of this evidence is its suggestion that a stone lodged in a pinch point—although not the pinch point at issue in this case—may lock the steering. However, this minimal value cannot outweigh the substantial risk of unfair prejudice posed by admitting evidence that may lead jurors to conclude that since General Motors took steps to remedy a possible steering gear layout design defect in one model, it should have taken the same remedial measures for an entirely different model with an entirely different layout. Because of this imbalance, we cannot say that the trial court's decision excluding the evidence of recall and redesign was beyond the bounds of reasonability. We therefore affirm the ruling on this issue.

■ We now consider whether the trial court erred in granting a directed verdict for General Motors. We reverse a directed verdict when the evidence, taken in a light most favorable to the nonmoving party, is sufficient to permit a reasonable jury to find for the nonmovant. *Gourdin v. Sharon's Cultural Educ. Recreational Assoc.*, 845 P.2d 242, 243 (Utah 1992); *Management Comm.*, 652 P.2d at 897–98; *Taylor v. Keith O'Brien, Inc.*, 537 P.2d 1022, 1022 (Utah 1975).

■ In support of their claim that the directed verdict was erroneous, the Nays argue that they produced expert evidence meeting their burden of proof that "at the time the product was sold by the manufacturer ..., there was a defect or defective condition in the product which made the product unreasonably dangerous to the user or consumer," Utah Code Ann. § 78–15–6(1), and that the defect caused the fatal accident, *Mulherin v. Ingersoll–Rand Co.*, 628 P.2d 1301, 1304 (Utah 1981); *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 158 (Utah 1979) (plurality). Because of this expert testimony, they say, the trial court erred in taking their cause of action from the jury.

2. Even if the Nays did claim that Wayne Nay's truck had a pinch point between the coupling and the frame—which they do not—it is doubtful that the recall evidence would be of significant probative value. In the recalled cars, the steering coupling was mounted inside the automobile frame rail, with a clearance of about one-fourth inch. In Wayne Nay's truck, by contrast, the steering coupling is approximately one and one-fourth inches outside the frame. Because of this wider clearance, it is doubtful that the recall evidence would tend to establish the existence of a pinch point.

After briefing was completed in this case, we decided *Butterfield v. Okubo*, 831 P.2d 97 (Utah 1992), in which we discussed when expert testimony is sufficient to prevent taking an issue from the jury. *Butterfield* arose in a summary judgment context. *Id.* at 98. However, because both summary judgment and directed verdicts require that no questions of material fact exist and that the moving party be entitled to judgment as a matter of law,[3] the standard we set out in *Butterfield* applies equally to this case.

In *Butterfield*, we held that an expert witness can defeat summary judgment by expressing conclusions as to the dispositive issues before the finder of fact and by identifying the specific grounds upon which his or her conclusions are based. *Id.* at 104. Only when the expert states a conclusion without identifying supporting facts will summary judgment be appropriate. Here, the Nays' expert witnesses met the *Butterfield* standard. Taken together, their testimony establishes a complete, specific theory of both defect and causation. They identify the defect as the pinch point between the flexible coupling and the steering box. They sketch a comprehensive factual scenario of causation in which a tire clipped a stone lying on the road and the stone ricocheted from the fender, onto the top of the tire and into the steering gear, causing the steering wheel to lock and the truck to miss the curve. Certainly, General Motors can and does contest the likelihood, even the possibility, of this scenario. It is free to call its own witnesses to testify that the tire would not have clipped the stone, that the stone could not have bounced into the pinch point, and that even if the stone did bounce into the pinch point, it would not have locked the steering. But this very dispute creates an issue of fact within the province of the jury. Taking the evidence in the light most favorable to the Nays, as we must, *Finlayson v. Brady*, 121 Utah 204, 206, 240 P.2d 491, 492 (1952), we cannot say that reasonable jurors could not find in favor of the Nays. As we suggested in *Butterfield*, causation issues are factual issues that generally cannot be resolved as a matter of law. 831 P.2d at 106. We refuse to prevent these issues from going to the jury when, as here, there is any evidence upon which a reasonable jury could infer causation. *Id.* Therefore, the trial court erred in directing a verdict in favor of General Motors. *See Gourdin*, 845 P.2d at 243; *Management Comm.*, 652 P.2d at 897–98; *Anderson*, 30 Utah 2d at 71, 513 P.2d at 434.

We reverse the directed verdict, affirm the trial court's exclusion of the recall and redesign evidence, and remand this case for proceedings consistent with this opinion.

HALL, C.J., HOWE, Associate C.J., and STEWART and DURHAM, JJ., concur.

---

3. *Compare Butterfield*, 831 P.2d at 101, *with* 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2521, at 537 (1971).