**FIRST GENERAL SERVICES, a Utah corporation, Plaintiff, Appellant, and Cross-appellee,**

v.

**Zandra PERKINS, individually and as Trustee of the Zandra Perkins Family Trust, Defendant, Appellee and Cross-appellant,**

and

**Bear River Mutual Insurance Company, a Utah corporation, Defendant and Appellee,**

and

**Kent L. Frampton dba Kent L. Frampton Heating and Air Conditioning, Plaintiff, Appellee, and Cross-appellant.**

No. 930698–CA.

Court of Appeals of Utah.

June 6, 1996.

Darrel J. Bostwick and Jeffery R. Price, Walstad & Babcock, Salt Lake City, for Appellant First General Services.

David K. Smith, Midvale, for Appellee Kent Frampton.

Jesse C. Trentadue and Claudia F. Berry, Suitter, Axland & Hanson, Salt Lake City, for Appellee Zandra Perkins.

Henry E. Heath and H. Burt Ringwood, Strong & Hanni, Salt Lake City, for Appellee Bear River Mutual Insurance Company.

Before BILLINGS, JACKSON and WILKINS, JJ.

## OPINION

WILKINS, Judge:

### BACKGROUND

In May 1992, a fire damaged Zandra Perkins's home in Murray, Utah (the Murray fire). After notifying her insurer, Bear River Mutual Insurance Co. (Bear River), and after meeting with a claims adjuster, Perkins hired First General Services, Inc. (First General) to perform the repair and reconstruc-

tion work. First General, in turn, subcontracted with Kent Frampton, dba Frampton Heating and Air Conditioning (Frampton), to install a swamp cooler in Perkins's home.

Perkins eventually became dissatisfied with First General, dismissed First General, and instructed Bear River not to make additional payments to First General without Perkins's approval. First General claimed not to have received all the money owed by Perkins, and, as a result, did not pay all the money owed to Frampton.

Frampton brought suit against Perkins and First General, seeking to foreclose a mechanics' lien and seeking damages for breach of contract and unjust enrichment. First General then brought suit against Perkins for breach of contract and also to foreclose a mechanics' lien.

Perkins counterclaimed against Frampton, alleging negligent workmanship. Perkins also counterclaimed against First General, claiming breach of contract, fraud, negligent misrepresentation, slander of title, conversion, unjust enrichment, and constructive trust. Finally, Perkins filed a third-party complaint against Bear River for breach of contract, bad faith, negligence, and indemnification, among other claims. The cases were consolidated and tried to a jury over nine days.

## I. Frampton v. Perkins and First General

During the course of the proceedings, Frampton filed a motion for summary judgment on its claims against Perkins and First General. The trial court granted the motion and awarded Frampton $426.21 against both defendants. In addition, the court awarded Frampton attorney fees from Perkins, amounting to $4,557.00. However, the court stayed collection of the judgment and fee award pending resolution of Perkins's negligence claim against Frampton.

At the close of Perkins's case in chief, Frampton moved for a directed verdict on Perkins's counterclaims. The trial court granted the motion and entered judgment accordingly. In addition, at a post-trial hearing, the court ordered First General to in-

demnify Perkins by paying the fee award to Frampton.

Frampton also filed a post-trial motion to amend its judgment to include the additional attorney fees accrued defending Perkins's counterclaim for negligent workmanship. However, the trial court denied the motion, and Frampton appeals.

## II. First General v. Perkins

Following the trial, the jury determined that First General had prevailed on all its claims against Perkins, that Perkins owed First General $10,658.47 for labor and materials, and that First General also prevailed against Perkins on all of her counterclaims.

In addition, the parties agreed to have the jury determine the amount of reasonable attorney fees to be awarded First General pursuant to the contract and the mechanics' lien statute. The jury determined that the reasonable attorney fees due First General from Perkins amounted to $52,522.53. This represented the amount accrued through the second day of trial.

Perkins then filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for new trial. Perkins claimed, in part, that there was insufficient evidence as a matter of law relating to the reasonableness of the fee award to First General, and that it was error not to require First General to apportion the fees between the prosecution of its principal claims and the defense of Perkins's counterclaims. On the other hand, First General filed a motion to amend the judgment to include additional attorney fees incurred after the second day of trial.

After a hearing on the matter, the trial court partially granted Perkins's motion for judgment notwithstanding the verdict and reduced the jury's fee award from $52,522.53 to $10,658.47, an amount equal to First General's principal claim. The trial court denied First General's motion to amend the judgment.

First General now appeals the trial court's reduction of the jury's fee award, the denial of its motion for additional attorney fees, and the trial court's order that First General

indemnify Perkins by paying Frampton the attorney fees awarded against Perkins. In addition, Perkins cross-appeals, claiming the trial court erred by not requiring First General to apportion its fees between prosecution of its principal lien claim and defense of Perkins's counterclaims. Perkins argues that this failure to apportion precludes First General, as a matter of law, from any award of attorney fees.

### III. Perkins v. Bear River

Prior to trial, Perkins filed a motion in limine to exclude certain evidence Bear River intended to introduce to show that Perkins had been convicted of reckless burning for starting a fire in 1987 at her former home in Salt Lake City (the Salt Lake fire). The trial court granted the motion to exclude evidence of prior criminal convictions but refused to exclude evidence that Perkins had caused the Salt Lake fire.

Perkins also filed a motion for partial summary judgment requesting that the trial court strike one of Bear River's affirmative defenses, which claimed that the Murray fire was suspicious in nature. The trial court denied the motion, determining that Bear River could introduce evidence regarding the suspicious origin of the Murray fire, but that Bear River could not introduce evidence concerning *who* may have caused the fire.

Following the trial, the jury determined that Bear River still owed Perkins $5,100.00 for damages resulting from the Murray fire, but that Bear River did not breach its contract, did not act in bad faith, and was not otherwise liable to Perkins.

Perkins filed a motion for judgment notwithstanding the verdict, again claiming that the trial court should have excluded evidence of Perkins's involvement in the Salt Lake fire. The trial court denied the motion. Perkins appeals, claiming that the trial court erred in allowing introduction of evidence regarding the Salt Lake fire and the suspicious nature of the Murray fire. Perkins also claims that certain improper statements at trial by Bear River's counsel unfairly prejudiced her case and that a mistrial should have been granted.

### ANALYSIS

We first address the evidentiary issues raised by Perkins, as well as the issue of improper statements by opposing counsel, because resolution of those issues necessarily impacts on the validity of the underlying judgment. We subsequently address the various attorney fee issues.

### I. Evidentiary Issues

■ Perkins claims that evidence admitted to show that she caused the earlier Salt Lake fire and that the Murray fire appeared to have a suspicious origin was irrelevant, inflammatory, and unfairly prejudicial to her case. " 'In reviewing questions of admissibility of evidence at trial, deference is given to the trial court's advantageous position . . . .' " *Heslop v. Bank of Utah*, 839 P.2d 828, 838 (Utah 1992) (quoting *Whitehead v. American Motors Sales Corp.*, 801 P.2d 920, 923 (Utah 1990)). Accordingly, we will not reverse the trial court's evidentiary decisions made pursuant to Rules 401 and 403 of the Utah Rules of Evidence unless the court clearly abused its discretion. *See State v. Wetzel*, 868 P.2d 64, 67 (Utah 1993); *Nay v. General Motors Corp.*, 850 P.2d 1260, 1262 (Utah 1993).

■ Bear River claims that the evidence relating to causation of the two fires was relevant to show that Bear River attempted to process Perkins's claims in a timely manner despite knowledge of these facts and that any delays by Bear River were reasonable in light of these facts. Indeed, Bear River had a right to defend against charges that it acted in bad faith. Because the evidence concerning the Salt Lake and Murray fires—when viewed in relation to other evidence concerning the handling of Perkins's claims—had a tendency to make it more probable that Bear River acted in good faith, and less probable that it acted in bad faith, the evidence was relevant to the case. *See* Utah R. Evid. 401.

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . ." Utah R. Evid. 403. Bear River's knowledge that Perkins had previously set

fire to her Salt Lake home and that the fire in her Murray home appeared to be intentionally set—although Perkins was undisputedly out of town when the Murray fire occurred—could have profoundly impacted the manner in which Bear River chose to settle Perkins's insurance claims. That Bear River chose to overlook these facts in settling the claims and disbursing funds to Perkins seems fairly probative that Bear River acted in good faith.

Furthermore, the evidence was limited so as to reduce its possible prejudicial effect. The trial court excluded any evidence of Perkins's conviction for reckless burning in connection with the Salt Lake fire, and the court precluded Bear River from asking Perkins why or how she set the Salt Lake fire. In addition, while the jury was allowed to hear evidence that the Murray fire appeared suspicious and intentionally set, the trial court excluded any evidence or suggestions as to *who* may have set the fire. Finally, the testimony concerning the Salt Lake and Murray fires represented only a few statements occurring over the course of a nine-day trial.

While the admission of this evidence may have created some danger of unfair prejudice against Perkins, we cannot conclude that this danger *substantially* outweighed the probative value of the evidence. *See State v. Teuscher*, 883 P.2d 922, 928 (Utah App.1994). Thus, we conclude that the trial court's decision to admit the evidence was within the bounds of permitted discretion.

■ In any event, Perkins has failed to meet her burden of showing that any error in admitting the evidence was harmful. *See State v. Hamilton*, 827 P.2d 232, 240 (Utah 1992) ("[E]ven if we were to conclude that the evidence here was improperly admitted, that would not decide the issue. We still would have to determine whether the error was harmful."). In light of the substantial evidence supporting the other parties' claims and defenses, any error in admitting the challenged evidence was harmless in that "there is no reasonable likelihood that the error [if any] affected the outcome of the proceedings." *Id.*

## II.   Improper Statements by Counsel

In opening arguments, Bear River's counsel made references to alleged fraudulent behavior by Perkins, claiming that she had submitted fraudulent claims and had attempted to defraud Bear River. Counsel for Perkins immediately made a motion for a mistrial, or in the alternative to admonish the jury, on the basis that fraud by Perkins was not an issue in the case.

While Bear River's answer did assert as a defense that Perkins had submitted false insurance claims, it did not assert actual fraud on her part. Accordingly, the trial court was concerned with counsel's references to fraud. Even so, the trial court denied Perkins's motion for a mistrial, requesting instead that counsel for Perkins and Bear River prepare an admonishment to be read to the jury. Counsel for the two parties reached a stipulated agreement as to an instruction for the court to read to the jury, which the court did.

■ Perkins claims on appeal that the trial court erred by not granting the motion for a mistrial. "We will not overturn the trial court's decision to grant or deny a motion for a mistrial absent an abuse of discretion." *Rasmussen v. Sharapata*, 895 P.2d 391, 394 (Utah App.1995); *see also Watkins & Faber v. Whiteley*, 592 P.2d 613, 616 (Utah 1979). As the Utah Supreme Court remarked:

> We are able to assess only the words as they appear in the record. The trial judge, on the other hand, was able to note other relevant factors such as counsel's gestures, inflection, and expressions, as well as the jury's reactions.... Trial courts are in a much better position than are appellate courts to assess the overall effect of attorney misconduct at trial.

*Donohue v. Intermountain Health Care, Inc.*, 748 P.2d 1067, 1068 (Utah 1987).[*] After weighing all relevant factors, the trial court determined that a new trial was not necessary in order to prevent a miscarriage of justice. *See Watkins & Faber*, 592 P.2d at 616 ("A mistrial should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted."). We conclude that the trial court acted

well within the scope of permitted discretion by reading a corrective statement instead of granting a mistrial. *See State v. Cabututan,* 861 P.2d 408, 413 (Utah 1993) ("[I]f improper statements are made by counsel during a trial, . . . the court may make a correction by proper instruction and, if the offense is sufficiently prejudicial, declare a mistrial.").

### III. Attorney Fees Under the Mechanics' Lien Statute

■ Having affirmed the validity of the underlying judgments, we turn to the resolution of the attorney fee issues. Both Frampton and First General claim the trial court erred by refusing to award or allow fees, under the mechanics' lien statute, for successfully defending against Perkins's counterclaims. *See* Utah Code Ann. § 38–1–18 (1994). Perkins claims that section 38–1–18 should be construed narrowly and that any right to fees under the statute should be limited to fees incurred prosecuting or defending against the principal claim seeking to enforce the lien. The issue presented requires us to interpret section 38–1–18, a matter of law on which we accord no deference to the trial court. *See State v. Larsen,* 865 P.2d 1355, 1357 (Utah 1993).

Section 38–1–18 states: "In any action brought to enforce any lien under this chapter the successful party shall be entitled to recover a reasonable attorneys' fee, to be fixed by the court, which shall be taxed as costs in the action." Utah Code Ann. § 38–1–18 (1994). Perkins relies on *Rotta v. Hawk,* 756 P.2d 713 (Utah App.1988), for the proposition that this section should be construed narrowly. Nevertheless, *Rotta* merely states that "Utah case law interprets this section narrowly requiring a complaint or counterclaim initially be brought to enforce a lien in order to award attorney fees." *Id.* at 716.

■ Of course, "compliance with the [mechanics' lien] statute is required before a party is entitled to the benefits created by the statute." *AAA Fencing Co. v. Raintree*

*Dev. & Energy Co.,* 714 P.2d 289, 291 (Utah 1986) (per curiam). Frampton and First General both sought to foreclose mechanics' liens through complaints brought against Perkins. Both clearly qualify as actions "brought to enforce any lien" under the mechanics' lien statute. *See* Utah Code Ann. § 38–1–18 (1994); *Petty Inv. Co. v. Miller,* 576 P.2d 883, 884 (Utah 1978).

■ Once the narrow requirements of the mechanics' lien statutes have been met, the general policy of Utah courts is to construe the statutes broadly to protect those who enhance the value of property by supplying labor or materials. *See, e.g., Richards v. Security Pac. Nat'l Bank,* 849 P.2d 606, 610 (Utah App.), *cert. denied, Richards v. Youngman,* 859 P.2d 585 (Utah 1993). Accordingly, we hold that the successful defense of counterclaims which would otherwise defeat the principal lien claim, in whole or in part, must necessarily be considered for the purpose of awarding attorney fees under the mechanics' lien statute. Logically, a lien holder must defend against such claims in order to "enforce" the lien. Nevertheless, the principal claim and counterclaims must be sufficiently tied together so that the right to enforce the lien would be defeated or diminished by the counterclaim. Counterclaims completely separate from the lien claim, which merely seek to offset amounts recoverable through enforcement of a mechanics' lien, would not qualify.[1]

■ In the present matter, if Perkins had proven negligent workmanship on Frampton's part, then the value of Frampton's labor would have been diminished, thereby at least partially defeating Frampton's right of recovery through foreclosure of the lien. Thus, the trial court erred by refusing to award Frampton reasonable fees for the successful defense against Perkins's counterclaim. In addition, we conclude that Perkins's counterclaims against First General are sufficiently tied to enforcement of the lien or to enforcement of the contract to

---

**1.** The same analysis of course applies when the lien holder brings an action to enforce the lien through a *counterclaim* and when the *principal* claim would defeat the lien claim. Furthermore, if the claims are thus interrelated, the successful party is entitled to the fees regardless of whether that party was seeking to enforce the lien or to defend against it.

merit an award of attorney fees for First General's successful defense.

### IV. Jury Award of Attorney Fees

At trial, the jury determined that First General was entitled to $52,522.53 in reasonable attorney fees. The trial court, however, partially granted Perkins's motion for judgment notwithstanding the verdict, concluding that First General's incurrence of more than $52,000 in attorney fees in seeking recovery of only $10,658.47 was simply not reasonable. The trial court then reduced the fee award to $10,658.47.

Normally, an award of attorney fees is a matter left to the trial court's sound discretion. *See, e.g., Dixie State Bank v. Bracken,* 764 P.2d 985, 988 (Utah 1988). However, like other matters in equity, the parties and the court may allow the issue of reasonable attorney fees to be decided by a jury. *See* Utah R. Civ. P. 39(c); *see, e.g., Wright v. Westside Nursery,* 787 P.2d 508, 517 (Utah App.1990).

Perkins suggests that the jury merely acted in an advisory capacity on this issue and that the trial court treated the jury's fee award as such. However, neither party requested an advisory jury on the matter, and the proceedings went forward as if the attorney fees issue were being tried by jury as a matter of right. Under such circumstances, the trial court may only treat the jury's verdict as advisory if the court notified the parties of its intent to do so prior to allowing the issue to be tried before the jury. *See Goldberg v. Jay Timmons & Assocs.,* 896 P.2d 1241, 1243–44 (Utah App. 1995). The trial court did not so notify the parties in this case.

Accordingly, the jury's fee award has the same force and effect as a typically binding jury verdict.[2] Furthermore, granting judgment notwithstanding the verdict as to the fee award was improper because Perkins never made a motion for directed verdict on the issue prior to her motion for judgment notwithstanding the verdict. *See* Utah R. Civ. P. 50(b) ("[A] party who *has moved for a directed verdict* may move [for judgment notwithstanding the verdict] to have judgment entered *in accordance with his motion for a directed verdict* . . . ." (emphasis added)); *Pollesche v. Transamerican Ins. Co.,* 27 Utah 2d 430, 433 n. 1, 497 P.2d 236, 238 n. 1 (1972) (indicating that failure of party to make motion for directed verdict not only forecloses trial court from considering motion for judgment notwithstanding the verdict, but also precludes appellate court from reviewing sufficiency of evidence to sustain verdict).

In any event, the trial court failed to make the required findings for reducing the fee award. *See Govert Copier Painting v. Van Leeuwen,* 801 P.2d 163, 174 (Utah App.1990) (indicating that court must make findings to explain reduction of attorney fees and to demonstrate that court utilized proper factors for reducing fees). Despite the court's lack of explanation, it appears the court placed substantial importance on the amount of First General's principal lien claim when the court determined that the amount of fees requested was unreasonable.

> [A]lthough the amount in controversy can be a factor in determining a reasonable fee, care should be used in putting much reliance on this factor. It is a simple fact in a lawyer's life that it takes about the same amount of time to collect a note in the amount of $1,000 as it takes to collect a note for $100,000.

*Dixie State Bank,* 764 P.2d at 990. Finally, as we have already established, the trial court should have considered First General's successful defense of Perkins's counterclaims in addition to First General's prosecution of its own claims. Perkins's counterclaims sought in excess of $100,000 in damages from First General.

We therefore reverse the trial court's grant of judgment notwithstanding the verdict and reinstate the jury's attorney fee award.

---

2. We note for future guidance that submitting the issue of reasonable attorney fees to a jury without specific instructions regarding the legal issues required for consideration is error. However, Perkins did not challenge the jury instructions below or raise the issue on appeal, and she has thus waived any right to present the issue for our review.

## V. Indemnification of Perkins

Following the hearing on the post-trial motions, the trial court ordered First General to indemnify Perkins by paying the attorney fees awarded to Frampton pursuant to the mechanics' lien statute. Section 38–1–17 of the Utah Code provides that "[a]s between the owner and the contractor the court shall apportion the costs [which includes attorney fees] *according to the right of the case.*" Utah Code Ann. § 38–1–17 (1994) (emphasis added). Perkins claims that if First General had simply paid Frampton, then Frampton would not have had to enforce its lien, and, therefore, First General is ultimately responsible for Frampton's suit. Nevertheless, First General prevailed against Perkins on every claim between the two parties. The "right of the case" thus requires all apportionment of costs to be in favor of First General rather than Perkins.

Perkins further argues that *Hoth v. White*, 799 P.2d 213, 219–21 (Utah App.1990), authorizes a trial court to order a general contractor to indemnify a homeowner against a subcontractor, even for attorney fees. However, *Hoth* differs dramatically from the present situation in that the homeowners in that case prevailed in their separate action against the general contractor. *Id.* Perkins prevailed against no one in this case. The trial court erred as a matter of law in ordering First General to indemnify Perkins against Frampton by paying the attorney fees awarded under the mechanics' lien statute. *See* Utah Code Ann. § 38–1–17 (1994). We vacate the order.

## CONCLUSION

We affirm the trial court's decision to admit certain evidence relating to the Salt Lake and Murray fires. We further affirm the trial court's denial of Perkins's motion for a mistrial, made after improper remarks of Bear River's counsel during opening arguments.

However, we reverse the trial court's denials of the two contractors' motions to amend the judgment to include additional attorney fees. The trial court erred by refusing to consider and award reasonable attorney fees incurred in defense of Perkins's counterclaims and, in the case of First General, by refusing to award any fees incurred after the second day of trial.

The trial court also erred in partially granting judgment notwithstanding the verdict and reducing the jury's fee award to First General. Accordingly, we reinstate the jury's award. In addition, the trial court erred in ordering First General to indemnify Perkins by paying the attorney fees awarded to Frampton. The "right of the case" does not allow it, and we thus vacate the court's order to do so.

Finally, we remand the case to the trial court for the limited purpose of determining the reasonable attorney fees which Frampton and First General have a right to receive and have not yet been awarded. These include the reasonable fees incurred by Frampton in defending against Perkins's counterclaim. The trial court must also determine the reasonable attorney fees incurred by First General in prosecuting its principal claims, and defending against Perkins's counterclaims, following the second day of trial. On remand, the trial court should follow the steps expressly established for the determination of a reasonable fee award: (1) What legal work was performed? (2) How much of that work was reasonably necessary to prosecute and defend the matter? (3) Was the attorney's billing rate reasonable in light of the locality and type of services rendered? (4) Are there other factors requiring special consideration? *See Dixie State Bank v. Bracken*, 764 P.2d 985, 990 (Utah 1988).

In addition, because Frampton and First General have prevailed on appeal, the trial court should determine and award reasonable fees incurred by the two parties on appeal as well. All these fees are to be assessed against Perkins.

BILLINGS and JACKSON, JJ., concur.